**PENN–DUTCH KITCHENS, INC.**

v.

**Thomas J. GRADY et al.**

No. 93–0243–M.P.

Supreme Court of Rhode Island.

Dec. 22, 1994.

Richard P. D'Addario, Newport, for plaintiff.

John T. Walsh, Pawtucket, Lawrence P. McCarthy, Higgins, Cavanagh & Cooney, Providence, for defendant.

OPINION

MURRAY, Justice.

This case came before us on the petition of Thomas J. Grady (Grady) for writ of certiorari. Grady requests this court reverse the trial justice's denial of his motion for summary judgment and to dismiss this action. To the extent noted below, we grant Grady's petition.

This case is a legal-malpractice action instituted against attorney Grady individually and as a general partner of the Rhode Island law firm Lenihan, Moone, Gallogly & Comolli (LMG & C) by Penn–Dutch Kitchens, Inc. (Penn–Dutch). Penn–Dutch is a Delaware corporation solely owned by its president, Richard Prindle. On or about May 26, 1988, Penn–Dutch hired LMG & C to collect a May 11, 1988 Connecticut money judgment Penn–Dutch had obtained against Leroy J. Bailey (Bailey). Over a year before Penn–Dutch obtained the Connecticut judgment, Bailey was a 50–percent owner of a valuable piece of real estate in Westerly, Rhode Island.

After being assigned the case, Grady immediately conducted a title search, finding that Bailey had transferred his one-half interest in the Westerly property to his wife, Marilyn Bailey, on April 14, 1987. This transfer occurred two months after Bailey appeared by counsel to contest Penn–Dutch's Connecticut suit. On May 26, 1988, Grady filed a complaint on behalf of Penn–Dutch against Bailey and Marilyn to enforce the May 11, 1988 Connecticut judgment and to set aside the allegedly fraudulent conveyance of Bailey's interest in the Westerly property to his wife. With the complaint, Grady filed a motion for a writ of attachment and recorded a *lis pendens* in the Land Evidence Records of Westerly. That same day Grady sought and received a temporary restraining order prohibiting any transfer or sale of the property. The matter was assigned for hearing on a preliminary injunction to June 3, 1988.

During the next four months the matter was repeatedly continued and transferred between the Washington County and the Providence County Superior Courts. From an

examination of the record, especially Grady's affidavit, none of the transfers or continuances, except for one continuance, appear to have been at Grady's request. That one continuance seems to have been made at the insistence of the president of Penn–Dutch, Richard Prindle, who was going to be out of the country during the first few weeks of September 1988. Our examination reveals that most of the continuances and transfers appear to have been made *sua sponte* by the trial justices. In fact many of them were made over Grady's objection. Despite these delays a temporary restraining order governing the Westerly property remained in full force and effect throughout this period.

The matter was finally heard on September 26, 1988. The trial justice granted Grady's motion for a preliminary injunction to enjoin any transfer or sale of the Westerly property and denied Bailey's motion to dismiss. Because the trial justice failed to rule on the motion for writ of attachment which was before him, Grady filed a motion to clarify the trial justice's decision on October 4, 1988. At a hearing on October 17, 1988 the writ of attachment was finally granted. The following day, the attachment was recorded in the Land Evidence Records for the Town of Westerly.

On November 28, 1988, Bailey and his wife filed a voluntary petition in bankruptcy pursuant to chapter 7 of the Federal Bankruptcy Code in the United States Bankruptcy Court District of Connecticut. On January 26, 1989, the trustee in bankruptcy's motion to sell the Westerly property free and clear of all encumbrances came before the bankruptcy court for a hearing. In order to safeguard its interests in the Westerly property throughout the Baileys' bankruptcy proceedings, Penn–Dutch had retained the services of Connecticut attorney Richard Liebert (Liebert).

During the hearing, the trustee continually took the position that the Westerly attachment was a voidable preference under the bankruptcy code. Apparently realizing this fact, Liebert argued that the *lis pendens* filed by Grady six months before the petition for bankruptcy was essentially equivalent to a writ of attachment and therefore prevented the land from being sold. Liebert further argued that the injunction governing the land also prevented any sale. However, the bankruptcy court allowed the trustee to sell the property with the stipulation that the parties were free to litigate over the proceeds derived from the sale. Furthermore, on March 29, 1989, Penn–Dutch filed a compliance with the bankruptcy court's scheduling order and "conced[ed] that if the *Lis Pendens* and/or Injunction do not act .as a lien or encumbrance against the Trustee, then the attachment which was filed within ninety (90) days of the filing of the voluntary petition is voidable as a preference."

On August 11, 1989, the bankruptcy court issued its decision rejecting the argument that the *lis pendens* filed and the injunction obtained by Grady on behalf of Penn–Dutch constituted an equitable lien. The court further held that the writ of attachment recorded on October 18, 1988, was null and void because it constituted a voidable preference under the Federal Bankruptcy Code. As a result of the court's adverse decision, Penn–Dutch brought this suit against Grady for negligence and breach of contract on August 11, 1992.

Five months later, on January 15, 1993, the trial justice denied Grady's motion for summary judgment. The trial justice stated that on the basis of his examination of the evidence adduced at this point, Grady's actions were reasonable. However, the trial justice reasoned that, sitting as a trial justice, he was not empowered to make such a determination without the "benefit of expert opinion." The trial justice further explained that there were "sufficient facts in the affidavit by Mr. Prindle to raise some questions of fact that will have to be decided by a fact finder." Therefore, the trial justice denied Grady's motion.

Grady filed a petition for writ of certiorari, which we granted on December 16, 1993. He now asserts that the trial justice erred in denying his motion for summary judgment in numerous respects: there were no material facts disputing the reasonableness of Grady's conduct, and as such, summary judgment in Grady's favor was appropriate; Grady's affidavit constituted expert opinion that his con-

duct was reasonable, and therefore, there was no need for any further expert opinion; Grady could have done nothing to prevent the Baileys from voluntarily going into bankruptcy at any point; and the statute of limitations had tolled. Because this petition can be decided solely on the basis of the statute of limitations, we need not reach any of the other issues raised in this petition.

The statute of limitations governing legal-malpractice actions is of fairly recent origin having been enacted in 1988. *See* G.L.1956 (1985 Reenactment) § 9–1–14.3, as enacted by P.L.1988, ch. 212, § 1. Before this time legal-malpractice actions were governed by the ten-year statute of limitations regulating unspecified civil actions. *See* § 9–1–13(a). Because of its somewhat recent enactment, § 9–1–14.3 has never been the subject of litigation before this court. In relevant part § 9–1–14.3 provides that

> "an action for legal malpractice shall be commenced within three (3) years of the occurrence of the incident which gave rise to the action; providing however, that:
>
> \* \* \*
>
> (b) In respect to those injuries due to acts of legal malpractice which could not in the exercise of reasonable diligence be discoverable at the time of the occurrence of the incident which gave rise to the action, suit shall be commenced within three (3) years of the time that the act or acts of legal malpractice should, in the exercise of reasonable diligence, have been discovered."

In support of his argument that the statute of limitations has tolled, Grady asserts that Penn–Dutch "was aware of the possibility that the attachment was voidable as early as January 26, 1989, when the matter came before the Bankruptcy Judge." Grady further contends that by March 29, 1989, Penn–Dutch possessed explicit knowledge that the attachment would be voidable when its Connecticut bankruptcy attorney conceded as much in a written compliance filed in response to the bankruptcy court's scheduling order. As a result, Grady, avers, Penn–Dutch suffered damage and possessed knowledge of the alleged malpractice, by the latest, on March 29, 1989. Penn–Dutch counters by

arguing that the statute of limitations for legal malpractice begins to run when injury or damage results from the alleged malpractice and "the acts giving rise to the injury should have been discovered." Penn–Dutch reasons that it did not suffer any damage or injury until the Connecticut Bankruptcy Court rendered its decision on August 11, 1989, and therefore, its action is timely.

▪ To determine when a legal-malpractice cause of action accrues for purposes of commencing the statute-of-limitations period contained in § 9–1–14.3, we must look to the language of that statute. Where, as here, the statute is unambiguous on its face and expresses a clear and sensible meaning, this court must interpret the statute according to the plain and literal meaning contained therein. *Providence Journal Co. v. Sundlun,* 616 A.2d 1131, 1135 (R.I.1992); *Ellis v. Rhode Island Public Transit Authority,* 586 A.2d 1055, 1058 (R.I.1991). With this in mind, we note that § 9–1–14.3 begins by clearly setting forth the general rule that legal-malpractice actions must be brought within three years of the acts or omissions constituting the alleged legal malpractice. However, subsection (b) of § 9–1–14.3 provides an exception where the legal malpractice could not be discovered through the exercise of reasonable diligence at the time of its occurrence. In such a case, the action must be brought "within three (3) years of the time that the act or acts of legal malpractice should, in the exercise of reasonable diligence, have been discovered." Section § 9–1–14.3(b).

▪ In the instant case Grady's alleged malpractice occurred when he failed to file a writ of attachment over ninety days before the Baileys November 28, 1988 petition for bankruptcy. We are of the opinion that as a matter of law this allegedly negligent omission should have been discovered in the exercise of reasonable diligence in the early part of 1989. We reach this conclusion from an examination of the following facts gleaned from the record.

When the trustee in bankruptcy sought to sell the Westerly property free and clear of all encumbrances, Penn–Dutch hired Connecticut attorney Liebert to represent its

interests in the January 26, 1989 hearing before the Connecticut Bankruptcy Court. Because the October 1988 writ of attachment was clearly a voidable preference, Liebert was forced to argue that the *lis pendens* filed by Grady and the injunction governing the land prevented any sale of the property. By March 29, 1989, Liebert openly conceded in a written compliance with the bankruptcy court's scheduling order that the October 17, 1988 writ of attachment obtained by Grady was a voidable preference under the Federal Bankruptcy Code. Therefore, we are of the opinion that as a matter of law Penn–Dutch, by exercising reasonable diligence, should have known of the alleged negligent omission by March 29, 1989, at the latest. As a consequence, the August 11, 1992 suit instituted against Grady is barred by the three-year statute-of-limitations period contained in § 9–1–14.3.[1]

Accordingly the petition for certiorari is granted, the order of the trial justice is quashed, and the case is remanded to the Superior Court with our decision endorsed thereon and with instructions that defendant's motion for summary judgment be granted.

---

1. Although we decide this case on the ground that the statute of limitations has tolled, we feel compelled to point out that under our review of the entire record, Grady's conduct appears reasonable, especially in light of the fact that the Baileys could have filed for bankruptcy at any time without warning.