**GAIL FRANCES, INC., Plaintiff,**

v.

**ALASKA DIESEL ELECTRIC, INC., Defendant.**

**No. 98–0165/L.**

United States District Court, D. Rhode Island.

Aug. 4, 1999.

Gerald J. Petros, Hinckley, Allen & Snyder, Providence, RI, for plaintiffs.

Brooks R. Magratten, Vetter & White, Providence, RI, for defendants.

## MEMORANDUM AND ORDER

LAGUEUX, Chief Judge.

### I. *Introduction*

Gail Frances, Inc. ("GFI") is a small Rhode Island company that helps put the "ocean" in the Ocean State. Through its fishing tour business, GFI allows people to enjoy one of the coastal activities that this state has to offer. When GFI needed new diesel engines for its two boats, the LADY FRANCES and the GAIL FRANCES, it

navigated the waters of interstate commerce to the Pacific coast. Alaska Diesel Electric, Inc. ("Alaska") is a corporation based in the State of Washington. It sells diesel engines. After meeting in New Orleans, functionaries of the two corporations set sail on a bi-coastal business relationship. They negotiated an unwritten contract, and between 1991 and 1992 GFI purchased six diesel engines from Alaska.

The relationship foundered when the engines began breaking down in the summer of 1993. GFI wanted Alaska to take responsibility for the defective engines and wanted to purchase extended warranties on all six. Alaska refused, and the deal sank. GFI sued Alaska in state court claiming breach of contract, breach of warranty, misrepresentation, and negligence. The matter was removed to this Court on March 27, 1998. This matter is now before the Court on Alaska's motion for summary judgment on all of GFI's claims, contained in eight counts.

Two issues must be decided. First, whether GFI's contract and warranty claims are time-barred by the statute of limitations contained in the Rhode Island Uniform Commercial Code. Second, whether GFI's misrepresentation and negligence claims are barred by the common law economic loss doctrine. This Court agrees with Alaska that seven of the eight counts fail and thus grants summary judgment on Counts I, II, III, IV, VI, VII and VIII. There are material facts still in dispute as to allegations found in Count V, so summary judgment is not appropriate on that Count.

## II. *Facts*

The Court in this opinion recounts the facts in the light most favorable to plaintiff. Defendant denies that it gave GFI express warranties regarding the durability of the engines or that it offered GFI the option of purchasing extended warranties on any of the engines. Alaska further says that it disclaimed any warranties.

In 1989, Frances W. Blount, Jr. ("Blount"), president of GFI, traveled to New Orleans to attend a boat show. There, he spoke with a representative from Alaska about purchasing three engines.

Blount was concerned with the availability of an extended warranty. He contends that Alaska's representative assured him that he would be able to purchase a five-year extended warranty on each of the three engines within one year of purchasing them. Blount further claims that he was shown a copy of a five-year extended warranty that Alaska had recently provided to another customer.

Over the next year, Blount pondered the purchase of the Alaska engines. He talked to other Alaska representatives who all confirmed that he would have the option to purchase extended warranties if he bought the engines. Mike Maynard ("Maynard"), a sales manager for one of Alaska's local sales representatives, even wrote to Blount in January 1991 about the availability of the extended warranties.

In March 1991, Blount finally agreed to purchase three diesel engines from Alaska. Alaska's purchase price per engine was higher than comparable engines from other makers. Blount agreed to the higher price because both Maynard and Richard Gee, head of Alaska's engineering department, assured him that he would receive engines that would perform between 12,000 and 14,000 hours before they needed to be rebuilt along with an option to buy extended warranties on all of the engines purchased.

Although there was no written agreement between GFI and Alaska, Blount relied upon the fact that he was told that he would have the option to purchase extended warranties and that Alaska's engines would be more durable than those of its competitors. The three engines ordered in March 1991 were delivered in June of the same year. They were all in service in the LADY FRANCES by May 1992.

In December 1992, GFI purchased three more engines from Alaska for GFI's second boat, the GAIL FRANCES. At that time GFI was again promised the option of purchasing extended warranties for the additional three engines within one year after purchasing them. Those engines were all in service by the summer of 1993.

During that summer, the engines began performing poorly. GFI attempted to purchase the extended warranties on all six engines. Alaska would not sell GFI any warranties and, furthermore, denied that it had ever promised to do so. In October 1993, the center engine of the LADY FRANCES—one of the second lot, delivered in 1992—catastrophically failed when parts associated with the internal pistons blew through the engine block. The engine could not be repaired, and Alaska shipped a replacement engine that was installed in November 1993. Alaska billed GFI for the engine, but GFI says that it protested the bill and that Alaska dropped the matter.

Over the next five years, GFI continued experiencing problems with all the engines. The defects as recounted by GFI, included "failed couplings, a cracked housing on the reverse gear, exhaust manifold leaks, damage resulting from the engines running backwards, fuel pump problems, broken head bolts, defective seals [and] defective drives for the water pumps." (P.'s Mem. in Opp. to D.'s Mot. for Summ.J. at 5–6.) The poor performance peaked when the port engine of the LADY FRANCES exploded in December 1996 after only 6,000 hours of use. In total, GFI claims it incurred approximately $100,000 of damages due to the defective engines. Alaska denied responsibility under any warranty, and this lawsuit ensued.

### III. Legal Standard for Motion for Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on summary judgment motions:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The critical inquiry is whether a genuine issue of material fact exists. "Material facts are those 'that might affect the outcome of the suit under the governing law.'" Morrissey v. Boston Five Cents Sav. Bank, 54 F.3d 27, 31 (1st Cir.1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). "A dispute as to a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id.

On a motion for summary judgment, the Court must view all evidence and related inferences in the light most favorable to the nonmoving party. See Springfield Terminal Ry. Co. v. Canadian Pac. Ltd., 133 F.3d 103, 106 (1st Cir.1997). "[W]hen the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir.1995). Similarly, "[s]ummary judgment is not appropriate merely because the facts offered by the moving party seem more plausible, or because the opponent is unlikely to prevail at trial." Gannon v. Narragansett Elec. Co., 777 F.Supp. 167, 169 (D.R.I.1991).

### IV. Rhode Island Uniform Commercial Code

The Rhode Island Uniform Commercial Code (the "UCC") governs transactions in goods. See R.I.Gen.Laws § 6A–9–105 (1992). Goods are defined as moveable, personal property. See id. This case is governed by the Rhode Island UCC be-

cause engines are clearly "goods" under that statute.[1]

## V. Statute of Limitations

### A. Count I: Breach of Contract

The UCC provides that a breach of contract claim must be asserted no later than four years from the time that a cause of action accrues. See R.I.Gen.Laws § 6A–2–725 (1992).

■ The cause of action accrues at the time of the breach itself regardless of whether or not either party is aware of the breach. See R.I.Gen.Laws § 6A–2–725. See also Blue Ribbon Beef Co., Inc. v. Napolitano, 696 A.2d 1225, 1228 (R.I. 1997); Penn–Dutch Kitchens, Inc. v. Grady, 651 A.2d 731, 733 (R.I.1994); United States v. Skidmore, Owings & Merrill, 505 F.Supp. 1101, 1104 n. 3 (S.D.N.Y.1981).

GFI argues that its cause of action accrued when it incurred damages. This is important because the breach in this case actually occurred in 1993 when GFI was denied the ability to purchase the extended warranties which it claims was an original term of the agreement.

The Rhode Island Supreme Court disagrees with GFI's argument. The Blue Ribbon court held that a cause of action for breach of contract accrues at the breach even when damages occur later. See Blue Ribbon, 696 A.2d at 1229. In Blue Ribbon, the court was calculating prejudgment interest, which it determined did not begin to accrue until the damage— rather than the breach—occurred. See id. The Rhode Island Supreme Court was clear that the cause of action accrued at a different time than when damages occurred.

In a similar case, the United States District Court for the Southern District of New York confirmed that breach and damages occur at different times by stating that a breach of contract action accrues at breach even though the amount of damages "may not be ascertained until later." Skidmore, 505 F.Supp. at 1104 n. 3. The United States in Skidmore contended that its cause of action could not accrue until it suffered actual damage. See id. The Skidmore Court disagreed, holding that the government's cause of action accrued at the breach itself regardless of whether or not damages were calculable. See id.

GFI merely reheats the United States' losing argument in that case. To repeat, Rhode Island disagrees. The statute of limitations provision for breach of contract is clear. Where a statute is "unambiguous on its face and expresses a clear and sensible meaning," a court must "interpret the statute according to the plain and literal meaning contained therein." Grady, 651 A.2d at 733. The four-year statute of limitations in contract breach cases clearly begins to run at the time of the breach regardless of when actual damages are incurred. See R.I.Gen.Laws. § 6A–2–725.

■ The four-year statute of limitations in this case began to run in 1993 when Alaska refused to sell GFI the extended warranties. GFI brought this case in 1998, well after this four-year period ended. Therefore, Count I is time-barred, and Alaska's motion for summary judgment must be granted.

### B. Count V: Breach of Express Warranty

The UCC also provides for a four year statute of limitations in breach of express warranty cases. See R.I.Gen.Laws § 6A–2–725.

■ A cause of action for breach of an express warranty accrues when goods are tendered except when the warranty is for future performance. See id. See also Providence & Worcester R.R. Co. v. Sargent & Greenleaf, Inc., 802 F.Supp. 680, 689 (D.R.I.1992); Limbach v. Owens– Corning Fiberglas Corp., No. C83–759–L,

---

**1.** As to choice of law, neither party disputes that Rhode Island law and the Rhode Island UCC govern this transaction. Therefore, this Court will proceed in that fashion.

1987 WL 46569 at *1 (D.N.H. Jan. 28, 1987); *Wentworth v. Kawasaki, Inc.,* 508 F.Supp. 1114, 1116 (D.N.H.1981). A cause of action for breach of warranty for future performance accrues at the time that the breach is or should be discovered. *See* R.I.Gen.Laws § 6A–2–725.

This Court has held that whether or not an express warranty is for future performance is a question of material fact for the jury to decide and cannot be decided at the summary judgment stage. *See Providence & Worcester R.R. Co.,* 802 F.Supp. at 690.

For purposes of this motion, this Court must assume that GFI has alleged a future performance warranty. GFI alleges facts that show that the express warranty that it received guaranteed that the engines "would perform well and would be durable." (Complaint at 6.) The United States District Court for the District of New Hampshire explained that a lifetime warranty or a warranty which guarantees "satisfactory service at all times" both qualify as warranties for future performance because they cover performance which is ongoing. *See Limbach,* 1987 WL 46869, at *3. Like the examples cited in *Limbach,* the guaranteed performance in this case carries no ending date. *See id.* at *3. As a result, it can only refer to future performance, and this Court—for the purpose · of this motion—must determine when the breach of warranty actually occurred.

GFI claims that the breach occurred in December 1996, arguing that "the breaches involved, such as the 1996 explosion of the port engine on the LADY FRANCES, occurred within four years of the filing of this action." (P.'s Mem. of Law in Opp. To D.'s Mot. For Summ.J. at 6.) Alaska claims that the breach occurred in 1993 when GFI took delivery. Both contentions miss the mark.

■ Alaska's argument ignores the section of the statute that provides the future performance exception. GFI's argument overlooks its own undisputed fact that it knew of performance problems with the engines in 1993. Each engine carried its own warranty.[2] The issue is when the *first* breach of each warranty occurred, not whether any breach occurred during the four years before the filing of suit. GFI's memorandum states that the 1996 explosion was one of many problems with the engines which began in 1993. (*See* P.'s Mem. of Law in Opp. to D.'s Mot. For Summ.J. at 5–6.) A cause of action accrued to GFI each time that it noticed that an engine did not live up to the express warranty. Thus, the issue is when each engine began suffering from "failed couplings, a cracked housing on the reverse gear, exhaust manifold leaks, damages resulting from the engine running backwards, fuel pump problems, broken head bolts, defective seals, defective drives for the water pumps, [or] other problems." (Id.) Such flaws were notice that the engines would not "perform well" or "be durable." (Complaint at 5.)

■ The date of those notices cannot be determined by the evidence before the Court at this time. Alaska appears to have cured GFI's damage as to the 1993 explosion of the LADY FRANCES' center engine. Neither party has made it clear

**2.** The evidence before the Court is that Alaska sold the engines individually, rather than as trios that could be considered a single unit. The contract was for the sale of six individual items, each called an Alaska Diesel L–6140. Therefore, each engine carried its own warranty.

The description of the merchandise being sold is fundamental to the creation of the warranty. *Cf.* R.I.Gen.Laws 6A–2–313(b) (description of the items creates the warranty that they shall conform to the description).

Items that are so intermingled that they can be considered a single unit or are described as a single good would be covered by a single warranty.

But it is obvious that if a buyer purchases three automobiles that a breach of the warranty for future performance on Auto # 2 would not cause the statute of limitations to run for Auto # 1 or Auto # 3. The buyer would not have a cause of action on the other automobiles unless there were performance problems with those as well.

which engines had problems and on what dates. These fact issues must be settled at trial.

Therefore, Alaska's motion for summary judgment as to Count V is denied.

## C. Counts VI and VII: Breach of Implied Warranties

A four year statute of limitations also applies to a cause of action for breach of implied warranty. *See* R.I.Gen.Laws § 6A–2–725.

GFI claims that its breach of implied warranty of merchantability and implied warranty of fitness claims are not time-barred by the statute. It argues that the warranties apply to future performance and thus, the statute of limitations does not begin running until a breach occurs.

■ This argument is without merit. This Court has held that "by definition, implied warranties cannot explicitly extend to the future." *Providence & Worcester R.R. Co.*, 802 F.Supp. at 689. Rather, the statute states that a cause of action for breach of implied warranty accrues when tender of delivery is made. *See* R.I.Gen. Laws § 6A–2–725.

The statute of limitations in this case began running no later than 1992 when the last of the engines was delivered to GFI. GFI brought this case in February 1998, after the four-year period had ended. Therefore, Counts VI and VII are time-barred, and Alaska's motion for summary judgment must be granted.

## VI. Counts II, III, IV and VIII: Economic Loss Doctrine

Alaska claims that GFI's misrepresentation and negligence claims are all barred by the common law economic loss doctrine. The Rhode Island Supreme Court has defined the economic loss doctrine but has not explained when it would apply it.

■ The economic loss doctrine bars plaintiffs from "recovering purely economic losses in a negligence cause of action."

*Boston Investment Property #1 State v. E.W. Burman, Inc.*, 658 A.2d 515, 517 (R.I.1995). Economic loss is defined as "costs associated with repair and-or replacement of a defective product, or loss of profits consequent thereto." *Hart Engineering Co. v. FMC Corp.*, 593 F.Supp. 1471, 1481 n. 11 (D.R.I.1984) (Selya, J.).

The Rhode Island Supreme Court has not decided whether a plaintiff in a negligence case is entitled to recover damages for purely economic loss. Thus, this Court must predict from other available sources what the decision of that Court would be if this issue were before it. *See Blinzler v. Marriott International, Inc.*, 81 F.3d 1148, 1151 (1st Cir.1996).

As part of this exercise, this Court must also predict whether the Rhode Island Supreme Court would apply a negligent misrepresentation exception as has been adopted in some other states. In Hawaii and Vermont, courts have allowed plaintiffs to recover economic losses incurred as a result of a defendant's negligent misrepresentation during contract formation. *See State, by Bronster v. United States Steel Corp.*, 82 Hawai'i 32, 919 P.2d 294, 302 (1996); *Vermont Plastics Inc. v. Brine Inc.*, 79 F.3d 272, 277 (2nd Cir.1996) (applying Vermont law). GFI contends that this exception should apply here as well.

Therefore, two issues of first impression are before this Court. First, how would the Rhode Island high court apply the economic loss doctrine? Second, would that court recognize the negligent misrepresentation exception?

In considering the doctrine, Rhode Island courts have emphasized two guiding factors: the type of damages that a plaintiff incurs and whether privity of contract exists between the parties. *See Rousseau v. K.N. Construction*, 727 A.2d 190, 192 (R.I.1999); *Boston Investment Property*, 658 A.2d at 517. *See also Hart Engineering Co.*, 593 F.Supp. at 1482–1484.

As to damages, the courts distinguish between economic loss due to disappoint-

ing product performance and other injuries resulting from unforeseeable product danger. *See Hart Engineering Co.,* 593 F.Supp. at 1482.

In addition, the Rhode Island courts have emphasized the importance of privity of contract in the application of the economic loss doctrine. If privity exists, then the parties have had "ample opportunity to allocate the risks involved," and any damages resulting from that agreement must be remedied through the terms of the bargain. *See Hart Engineering Co.,* 593 F.Supp. at 1484. Plaintiff in *Rousseau* was a third party, not in privity of contract with the defendant in that case. Plaintiff never had the bargaining power necessary to take precautions. As a result, his tort claims survived. *See Rousseau,* 727 A.2d at 192.

In *Hart Engineering Co.,* then-District Judge Bruce Selya reasoned that once two parties enter into a contractual relationship "the remedy for economic loss relating to a purchaser's disappointed expectations due to deterioration, internal breakdown or non-accidental cause, on the other hand, lies in contract." *Hart Engineering Co.,* 593 F.Supp. at 1484. When two or more parties with equal bargaining power have privity of contract then each party has a fair opportunity to bargain for safeguards such as warranties or a reduced purchase price which compensate for possible poor performance. *See id.* at 1483. If a plaintiff does not take advantage of its bargaining ability in this manner, then it cannot later state a tort claim for loss resulting from breach of the contract agreement. *See id.* Tort causes of action such as strict liability or negligence are reserved for situations where injury results from unforseen danger which makes it impossible to take preliminary precautions. *See id.* at 1482. Tort law should further be reserved to protect those who do not have bargaining power and the ability to protect themselves initially from future problems. *See id.* at 1484.

In contrast to Rhode Island, Hawaii and Vermont focus on plaintiff's cause of action when evaluating the application of the negligent misrepresentation exception. *See United States Steel,* 919 P.2d at 294; *Vermont Plastics,* 79 F.3d at 277. The reasoning there differs from that used by Rhode Island courts where the emphasis is on the existence of privity of contract and the type of damages incurred.

In this case, GFI's misrepresentation and negligence claims are barred by the economic loss doctrine because GFI incurred only economic losses and because, assuming the facts in favor of GFI, there was privity of contract between GFI and Alaska.

For example, GFI stated that it incurred $100,000 worth of damages due to engine failure, replacing parts, and profits lost as a result of the boats being out of service. (*See* D.'s Mem. in Supp. of D.'s Mot. for Summ.J. at 12.) This is prototypical economic loss. In addition, GFI and Alaska were clearly in privity by 1991 when GFI agreed to purchase the initial three engines. The parties had been discussing the terms of such a sale for more than a year. As a result, each party had a fair opportunity to negotiate the terms of the agreement and to protect itself from potential problems arising from the deal.

This Court opines that the Rhode Island Supreme Court will not recognize the exception to the economic loss doctrine that other states have adopted. Therefore, GFI's tort claims fail and its injuries must be addressed through a cause of action based on the agreement itself. Therefore, Alaska's motion for summary judgment is granted as to Counts II, III, IV, VIII.

## VII. *Conclusion*

Although GFI finds itself adrift with only Count V to serve as its life jacket, the fact is that the company squandered its best chance of rescue when it allowed the statute of limitations to run on its contract and implied warranty claims. The eco-

nomic loss doctrine comprehensively jettisons GFI's tort claims from this case. Its warranty and contract claims were the most likely means of recovery when the engines turned out to be less than GFI expected. However, all claims except the express warranty Count are clearly time-barred.

For the preceding reasons, defendant's motion for summary judgment is granted as to Counts I, II, III, IV, VI, VII, and VIII. It is denied as to Count V. No judgments shall enter until all claims are resolved.

It is so Ordered.