DECISION
Before the Court is defendant Acura and American Honda Motor Company's (Honda) motion to dismiss pursuant to Super. R. Civ. P. 12(b)(6), as well as the objection thereto of plaintiffs Kevin Kennedy (Kennedy), William Muirhead (Muirhead) and Eric Robbins (Robbins).
 FACTS AND TRAVEL
This is a class action brought pursuant to Super. R. Civ. P. 23 and R.I.G.L. § 6-13.1-1 et seq., the Rhode Island Deceptive Trade Practices Act (DTPA). The proposed class representatives are Kennedy, Muirhead and Robbins. Each named plaintiff is the owner of an Acura NSX vehicle (NSX), model year 1991 or 1992, which became the subject of Honda's Service Bulletin No. 93-010, entitled "Broken Countershaft Bearing Snap Ring," (Bulletin), originally issued in 1993 and re-issued in 1997.
The Bulletin advises that 1991 or 1992 NSX vehicles with certain transmission numbers may experience a problem whereby "the transmission pops out of gear, or you hear a grinding/growling noise on deceleration or acceleration." Bulletin ¶ 1. The Bulletin further states that the probable cause of the problem is that the "snap ring holding the countershaft bearing in the transmission housing is broken." Id at ¶ 2. The Bulletin advises dealers to "inspect the countershaft bearing snap ring," and if it is broken, to replace the transmission. See Bulletin ¶ 4. Plaintiffs allege that this problem is due to a manufacturing defect on defendant's part. Defendant asserts that the cost of replacing the transmissions is approximately $7,000 per vehicle.
The Bulletin instructs Acura dealers that "[a]ny repair performed after warranty expiration may be eligible for goodwill consideration by the District Technical Manager or your Zone Office. You must request consideration, and get a decision, before starting work." Bulletin ¶ 8.
In January 2000, Kennedy, who owns a 1992 NSX, began experiencing transmission problems. After bringing his vehicle to Clair Acura in Norwood, Massachusetts for inspection and repair, it was discovered that his car's snap ring was, in fact, broken. The warranty on Kennedy's vehicle had previously expired. However, defendant paid $5,000 of the repair cost of replacing Kennedy's transmission, allegedly in order to maintain goodwill. Kennedy paid the remaining $2,500.
In 1996, after experiencing transmission problems with his 1991 NSX, Muirhead had his transmission rebuilt by a third party for a cost of $4,800. Muirhead was not eligible for the goodwill consideration under the Bulletin because his repairs were not performed by a Honda dealership. Muirhead does not assert that he sought the goodwill consideration from Honda.
Robbins has not experienced any problems with the transmission of his 1991 NSX because his snap ring has not yet failed. Accordingly, he was denied repair by Honda under the goodwill consideration. He was informed by defendant that he could request a goodwill repair only after his snap ring failed.
Plaintiffs seek to represent a class consisting of all persons who own or have owned an NSX, model year 1991 or 1992, containing a transmission specified in the Bulletin, and whose vehicles' transmission was replaced or repaired on account of the snap ring, the full cost of which was not covered by defendant, or who have not yet experienced any transmission problems due to snap ring failure and have not received any corrective action. Plaintiffs allege that as a direct and proximate result of defendant's refusal to cover the full cost of repair for the snap ring default, they have suffered, and continue to suffer, an ascertainable loss of money and/or personal property. Plaintiffs further assert that the inconsistency of defendant's decisions with regard to repairs of this nature is unfair and deceptive, in violation of DTPA.[1]
Plaintiffs do not seek any damages resulting from bodily injury or from any property damage other than to the transmission casing itself. Plaintiffs' only alleged injury is the cost of repairing or replacing the broken transmission or simply possessing a vehicle with a transmission which may break at some point in the future. Honda's warranty is limited to three years or 36,000 miles. Plaintiffs concede that their claims relate to repairs requested after any relevant warranty expired.
 DISCUSSION
Pursuant to Rule 12(b)(6) of the Rhode Island Superior Court Rules of Civil Procedure, a motion to dismiss is granted when, after viewing all evidence in a light most favorable to the non-moving party, the complaint fails to state a claim upon which relief may be granted. See inter aliaERI Max Entertainment, Inc. v. Streisand, 690 A.2d 1351, 1352 (R.I. 1997).
In this case, defendant asserts, and this Court agrees, that plaintiffs' claims must be dismissed for two reasons. First, plaintiffs fail to state a claim under DTPA. Second, Rhode Island law does not apply in this case. Thus, plaintiffs fail to state a claim under Rhode Island law upon which this Court can grant relief.
 FAILURE TO STATE A CLAIM UNDER DTPA
Under DTPA, in order to maintain a claim pursuant to § 6-13.1-2, plaintiffs must show the existence on defendant's part of "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." R.I.G.L. § 6-13.1-2.
In this case, plaintiffs allege that defendant's failure to pay the cost of repairing broken transmissions for certain NSX vehicles, after the expiration date of any applicable warranty, constitutes unfair and deceptive trade practices pursuant to DTPA. This Court disagrees finding that defendant's behavior with respect to the alleged faulty transmissions does not rise to the level of unfair or deceptive trade practices set forth by the Rhode Island Supreme Court because 1) the conduct at issue is exempt from liability under DTPA; 2) assuming, arguendo, that defendant's conduct is not exempt from DTPA, that conduct does not rise to the level of a DTPA violation; 3) plaintiffs have not alleged sufficient facts to allege that they were injured as a result of defendant's failure to pay the cost of their respective repairs; and 4) the complaint is time-barred by the applicable statute of limitations.See generally ERI Max Entertainment, Inc. v. Streisand, 690 A.2d 1351, 1354 (R.I. 1997) (granting Rule 12(b)(6) motion to dismiss DTPA claims where complaint failed to allege conduct within the definition of unfair methods of competition and unfair or deceptive acts or practices); Youngv. Park, 359 A.2d 697, 700 (R.I. 1976) (granting Rule 12(b)(6) motion where statute of limitations had expired on its face).
First, R.I.G.L. § 6-13.1-4 provides
 "Nothing in this chapter shall apply to actions or transactions permitted under laws administered by the department of business regulation or other regulatory body or officer acting under statutory authority of this state or the United States." R.I.G.L. § 6-13.1-4.
In Kelly v. Cowesett Hills Associates, 768 A.2d 425 (R.I. 2001), the Rhode Island Supreme Court interpreted this section to exempt from DTPA any activities and businesses subject to monitoring by state and federal regulatory bodies and offices. See id (dismissing a DTPA claim against a landlord concerning asbestos because asbestos removal is governed by another state regulatory law).
In this case, plaintiffs' claims are exempt from DTPA because they constitute consumer product warranty claims which are governed by the Federal Trade Commission under the Magnuson-Moss Warranty — Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq. (Magnuson Act). See Massachusetts Furniture Piano Movers Assoc. Inc. v. FederalTrade Commission, 773 F.3d 391, 394 (1st Cir. 1985) (holding that Section 201(a) of the Magnuson-Moss Act, extending the reach of Section 5 of the Federal Trade Commission Act from acts "in commerce" to acts "in or affecting commerce," grants the Federal Trade Commission, through the Magnuson-Moss Act, the jurisdiction to regulate activities of a party which affect interstate commerce). Further, Article Two of the Rhode Island Uniform Commercial Code (UCC) governs warranties for the sale of goods. See R.I.G.L. §§ 6A-2-313-318; Gail Frances, Inc. v. AlaskaDiesel Elec., Inc., 62 F.Supp.2d 511, 516-517 (D.R.I. 1999).
Although plaintiffs assert that defendant simply repackages DTPA claims as warranty claims in their attempt to challenge plaintiffs' allegations in this case, this Court disagrees holding that plaintiffs' claims are, in fact, consumer warranty claims because they deal with defendant's possible liability for its own defective goods. See id. Thus, plaintiffs' claims are subject to the monitoring of other state and federal regulatory bodies. Because plaintiffs' claims are governed by other statutes, they are exempt from regulation under DTPA.
Second, in order to determine whether a practice or act is unfair under the statute, the Rhode Island Supreme Court considers certain factors. Those factors include
 "(1) Whether . . . [the practice] is within at least the penumbra of some common law, statutory or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other business men)." Ames v. Oceanside Welding and Towing Co., 767 A.2d 677, 681 (R.I. 2001) (quoting FTC v. Sperry Hutchinson Co., 405 U.S. 233, 244-245 n. 5 (1972)).
In the case at bar, plaintiffs allege that defendant's decision to cover the entire cost of some customers requiring a new transmission while only paying the partial cost or denying coverage for others constitutes an unfair trade practice pursuant to DTPA. Defendant asserts however, and this Court agrees, that Honda's discretionary and purely voluntary decision to cover some, but not all, of the costs of repair, as a matter of customer goodwill, even though any relevant warranties have expired, does not fall within the well-established definition of unfairness. Honda had no legal duty or obligation to repair or replace any of the NSX transmissions at issue in this case because all applicable warranties had previously expired. Thus, any repairs that Honda did decide to undertake were purely discretionary and for the purpose of preserving customer goodwill, rather than the result of an owing legal duty to plaintiffs.
Plaintiffs further claim in this regard, that defendant's interpretation of this action as a warranty issue and not a DTPA claim is incorrect and otherwise irrelevant because, by defendant's own admission, any goodwill consideration by Honda would occur after the expiration of any relevant warranty. This Court disagrees with plaintiffs' assertion and notes that the relevancy of any expired warranties is critical in this case. If the warranties at issue here were still in effect at the time that plaintiffs discovered their respective transmission defects, then defendant would have a legal duty to plaintiffs under those warranties to repair the faulty transmissions. However, because the warranties have expired, Honda owes no such duty to plaintiffs. Conclusively, defendant's discretionary decision to partly cover or not cover the cost of repairing the faulty transmissions does not rise to the level of unfairness pursuant to R.I.G.L. § 6-13.1-2
as defined by the Rhode Island Supreme Court.
Further, with respect to defendant's alleged unfair trade practices, plaintiffs' warranties have, indeed, expired. Generally, warranties do not cover repairs made after the applicable time or mileage period have expired. See Abraham v. Volkswagon of America, Inc., 795 F.2d 238, 250 (2nd Cir. 1986) (holding that repairs are not covered after expiration of warranty even if defect was latent at the time of sale). The Rhode Island UCC permits warranties to be limited in duration absent a showing that the terms were so unreasonable as to be oppressive. See Hart EngineeringCo. v. FMC Corp., 593 F. Supp. 1471, 1480 (D.R.I. 1984). The duration of a warranty will be strictly enforced in light of circumstances whereby a product fails just after warranty expiration where there is no allegation that the product was designed to fail after the expiration of the warranty period. See Jackson v. Krieger Ford, Inc., 1989 WL 29351 (Ohio App.).
In this case, plaintiffs do not allege in their complaint that the terms of their three-year, 36,000 mile warranties were so unreasonable as to be oppressive, unreasonable or otherwise unenforceable.[2] Nor do they argue that Honda specifically designed the NSX transmissions to fail after the expiration of the warranty period. Thus, with nothing to invalidate the application of Honda's express warranties in this case, the warranties are valid, and they expired before any claim was made regarding a failed transmission. As a result, as discussed above, any repairs undertaken by Honda were purely discretionary rather than the result of an owed legal duty to plaintiffs.
Plaintiffs cite a Texas case to bolster their argument that defendant should compensate them for the costs of their repairs. In Bloyed, et al.v. General Motors Corp. et al., 881 S.W.2d 422 (Tex.App. 1994) the court found that it is fair and reasonable for defendants to pay for the repair of all vehicles damaged by a design or manufacturing defect. See Bloyed,
881 S.W.2d at 423-433. This Court notes, however, that Texas law is not binding on this Court. Further, Honda's subsequent actions with respect to the faulty transmissions do not rise to the level of unfairness required by R.I.G.L. § 6-13.1-2 as defendant had no legal duty to plaintiffs with respect to the faulty transmissions.
Finally, with respect to warranty issues, which are governed by state and federal warranty law, defendant's compliance with all applicable statutes exempts Honda from liability under DTPA. Generally, conduct that conforms to state and federal law cannot constitute unfair trade practice. See e.g. McCutcheon and Burr, Inc. v. Berman, 590 A.2d 438, 446-447 (Conn. 1991) (plaintiffs could not use DTPA to get around state law legally entitling defendants to refuse to pay commission); Jacksonv. South Holland Dodge, Inc., 755 N.E.2d 462 (Ill. 2001) (compliance with federal Truth in Lending Act is complete defense to claim brought under Illinois Consumer Fraud Act).
There is nothing before this Court indicating that Honda's conduct with respect to the transmissions in this case is not permitted under state or federal law, or otherwise fits within any established concept of unfairness. Thus, plaintiffs' claims flounder as their complaint fails to state a claim upon which this Court may grant relief under DTPA.
Third, plaintiffs Muirhead and Robbins have not alleged sufficient facts to establish they were injured in accordance with DTPA. In order to recover under DTPA, R.I.G.L. § 6-13.1-52 requires that a plaintiff suffer an "ascertainable loss of money or property . . . as a result of the use or employment by another person of a method, act or practice declared unlawful." R.I.G.L. § 6-13.1-52.
Plaintiff Muirhead's claim fails to conform to the requirements of R.I.G.L. § 6-13.1-52 because he never sought goodwill compensation from Honda. Muirhead hired a third party to rebuild his transmission. Thus, he has no way of knowing whether or not defendant would have repaired or replaced his transmission. Muirhead does not know whether his monetary and property loss in this case is the direct and proximate result of Honda's refusal to cover the full cost of repair for the snap ring default. As a result, Muirhead's DTPA claim fails.
Plaintiff Robbins clearly fails to satisfy the statutory requirement as he sought out a preemptive repair from Honda after learning about the possible transmission defect from the Bulletin. Robbins does not assert that he suffered any actual property or monetary damage with respect to his transmission. He simply requested that Honda replace the snap ring in his transmission in order to prevent a malfunction at some later date. Because there is nothing to show that Robbins has or will experience any loss as a result of his transmission, his DTPA claim fails as well.
Further, both Muirhead and Robbins bought their NSX vehicles used in 1994 and 2000. By the time these plaintiffs purchased their vehicles, it was known in the marketplace, due mostly to the Bulletin, that the vehicles were subject to the snap ring problem at issue in this case. Neither Muirhead nor Robbins puts anything before this Court to indicate that this possible defect was not reflected in the price of their cars. Thus, neither plaintiff can claim further injury by any unfair practice by Honda with respect to the circumstances surrounding the sale of each vehicle.
Fourth, plaintiffs' claims are barred by the applicable period of limitations. Assuming, arguendo, that plaintiffs do have valid claims under DTPA, those claims are barred by the period of limitations as interpreted by the courts. Although DTPA does not have its own statute of limitations, the Rhode Island Supreme Court has held that the period of limitations for DTPA claims depends on the underlying nature of the claim itself. See Paul v. City of Woonsocket, 745 A.2d 169 (R.I. 2000) (holding that courts must look to the limitations period of the state's most analogous cause of action).
In this case, as discussed above, the underlying claim is essentially for breach of implied warranty since plaintiffs allege that they did not receive what they bargained for. The implied warranty of fitness guarantees that an item is what it purports to be. "By definition, implied warranties cannot explicitly extend to the future." GailFrances, Inc. v. Alaska Diesel Elec., Inc., 62 F.Supp.2d 511, 517 (D.R.I. 1999) (quoting Providence Woonsocket R.R. Co. v. Sargent Greenleaf, Inc., 802 F. Supp. 680, 689 (D.R.I. 1992)). Rather, Article Two of the Rhode Island UCC mandates that a cause of action for breach of implied warranty accrues at the time of delivery. R.I.G.L. § 6A-2-275;Gail Frances, Inc., 62 F. Supp.2d at 517. The statute imposes a four-year statute of limitations in which to bring an action. Id. The transmissions in this case were originally delivered nine or ten years ago. Accordingly, plaintiffs' claims are barred by the four-year statute of limitations applicable to implied warranty claims which expired in this case approximately five to six years ago.
Although defendant asserts that there are constitutional issues that prevent the application of Rhode Island law to these claims and result in dismissal of this case, this Court finds no reason to address those issues here as plaintiffs fail to state a claim under DTPA, as previously discussed.
After careful review of the evidence and arguments presented by the parties, in a light most favorable to plaintiffs, this Court finds that plaintiffs fail to state a claim upon which this Court can grant relief. This Court grants defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Rhode Island Superior Court Rules of Civil Procedure. Counsel shall present an appropriate order after appropriate notice to all parties.
[1] Plaintiffs allege that defendant covered the entire cost of some customers requiring a new transmission while only paying the partial cost or denying coverage for others.
[2] The terms of plaintiffs' warranties limit any implied warranty to three years or 36,000 miles as well.