BLUE RIBBON BEEF COMPANY, INC.,

v.

**Stephen T. NAPOLITANO, in His Capacity as City Treasurer of the City of Providence.**

**No. 95–575–Appeal.**

Supreme Court of Rhode Island.

June 26, 1997.

See also: 463 A.2d 1313.

Dennis J. Roberts, II, Providence, for Plaintiff.

Richard A. Boren, Providence, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This appeal concerns the propriety of a trial justice's calculation of lost-profits damages incurred by a commercial tenant, the plaintiff, Blue Ribbon Beef Co., Inc. (Blue Ribbon), after its municipal landlord, the city of Providence (the city), breached its lease agreement. The defendant, Stephen T. Napolitano, in his capacity as city treasurer, appeals from a Superior Court judgment in favor of Blue Ribbon. After a jury-waived trial, a Superior Court justice entered a final judgment in favor of Blue Ribbon for $351,991 plus interest accruing from April 30, 1980.

The city claims that the trial justice erred in her lost-profits calculation by "cannibaliz[ing]" and then misapplying selected elements of the expert-accounting evidence proffered by each party, by awarding lost profits for two five-year-option periods, by rejecting the city's defense that Blue Ribbon failed to mitigate its damages, by neglecting to deduct Blue Ribbon's anticipated renovation costs from the damage award, and by including interest on Blue Ribbon's damages from the date when the lease was to begin (that is, the date Blue Ribbon's cause of action accrued for statute-of-limitations purposes) rather than from the date Blue Ribbon's damages actually began to accrue.

For the reasons set forth below, we uphold the trial justice's judgment in all but two respects: (1) her failure to reduce the damages awarded by the amount of Blue Ribbon's projected cost to renovate and reequip its building on the leased premises and (2) her awarding of prejudgment interest from April 30, 1980, the date Blue Ribbon's cause of action for breach of the lease agreement accrued, instead of from July 1, 1981, the date the trial justice found Blue Ribbon's damages began to accrue.

The background of this dispute is detailed in earlier reported decisions of this court and thus need not be repeated here. *See Blue Ribbon Beef Co. v. Napolitano*, 585 A.2d 67 (R.I.1991); *Providence & Worcester Co. v. Blue Ribbon Beef Co.*, 463 A.2d 1313 (R.I. 1983). Suffice it to say that the city breached a twenty-year lease agreement (ten-year base period with two optional five-year renewal terms) with Blue Ribbon by conveying the premises on which Blue Ribbon operated its wholesale meat distribution business to the Providence & Worcester Company (P & W). Because P & W had no notice of the city's lease with Blue Ribbon, it was a bona fide purchaser and thus Blue Ribbon's lease with the city could not be enforced against it. Eventually Blue Ribbon had to demolish its building pursuant to a court order sought by P & W. Although Blue Ribbon tried to continue its business by operating out of its proprietor's home, it ultimately ceased its meat distribution business for good in the mid– to late 1980's after its multiyear search for alternate locations proved unavailing. Consequently Blue Ribbon sued the city for its past and future lost profits.

■ The trial justice heard expert testimony from two certified public accountants called by the opposing parties, each of whom used a different method to estimate Blue Ribbon's lost profits. Although she found fault with certain aspects of both experts' approaches, she also found other portions of their testimony credible. Therefore, to arrive at a lost-profits award, she cobbled together different parts of each witness's testimony with her own sense of what lost-profits methodology appeared best to fit the evidence presented to her.[1] A trial justice does not err by engaging in such a selective evaluation and application of expert evidence to the facts presented during a trial. *See Warwick Musical Theatre, Inc. v. State*, 525 A.2d 905, 909 (R.I.1987) (affirming award of damages arrived at in a similar fashion); *White v. LeClerc*, 444 A.2d 847, 849 (R.I.1982) ("the trial justice clearly ha[s] an obligation to examine and consider the testimony of each expert witness on the issue of damages and to accord that testimony only such weight as the evidence, considered as a whole, and the inferences drawn therefrom reasonably warrant[ ]").

■ Although the city breached its lease agreement with Blue Ribbon on April 30, 1980, the trial justice found that Blue Ribbon did not sustain any damages until the July 1, 1981 to June 30, 1982 fiscal year (FY 1982) when its sales volume dropped from $1,407,-800 to $551,000. Although its income from operations for these diminished sales in FY 1982 actually increased over the previous fiscal year (FY 1981)—up to $24,200 from $21,300—the court concluded that but for the city's breach, both sales and profits would have increased during FY 1982. The trial justice credited Blue Ribbon's evidence that the presence of P & W, the new owner of the

real estate upon which Blue Ribbon's building stood, made it more difficult for Blue Ribbon to conduct business as usual and that its problems with this new owner affected the sales growth of Blue Ribbon's business beginning in FY 1982. Because this finding is supported by the testimony of Blue Ribbon's owner, we do not believe that the trial justice committed reversible error in reaching this conclusion. *See, e.g., Kenton v. Winters*, 667 A.2d 1264, 1265 (R.I.1995) ("this Court will not disturb the findings of a trial justice sitting without a jury unless the justice misconceived or overlooked material evidence or was otherwise clearly wrong").

■ Accordingly the trial justice used Blue Ribbon's FY 1981 actual sales of $1,407,800 as the most representative, benchmark year to estimate what Blue Ribbon's future sales would have been but for the city's breach of the lease. Although she then applied Blue Ribbon's FY 1982 actual profit margin of 4.42 percent to the higher projected sales for 1982 that she calculated Blue Ribbon would have achieved if the city had not breached its lease agreement, we do not believe that in doing so, the trial justice committed clear error. The evidence supported her conclusion that by FY 1982 Blue Ribbon had begun to reap the higher profit advantages of shifting into the portion-control end of the meat business. Similarly the record supports the trial justice's decision to award lost profits for both of the five-year-option periods. Blue Ribbon wanted a twenty-year lease and only agreed to a ten-year lease with two five-year-option periods because the city insisted upon this modification to allow it flexibility to negotiate upward rent adjustments. Further, the uncontradicted testimony from Blue Ribbon was that it in-

1. In deciding to award anticipated lost profits in this situation, we note with approval the trial justice's reliance on the Restatement (Second) *Property* § 10.2 (1976), which provides in pertinent part:

"If the tenant is entitled to recover damages from the landlord for his failure to fulfill his obligations under the lease, * * * damages may include one or more of the following items as may be appropriate so long as no double recovery is involved:
* * *

(5) if the use of the leased property contemplated by the parties is for business purposes, loss of anticipated business profits proven to a reasonable degree of certainty, which resulted from the landlord's default, and which the landlord at the time the lease was made could reasonably have foreseen would be caused by the default;
* * *
(7) interest on the amount recovered at the legal rate for the period appropriate under the circumstances."

tended to exercise these options to get the full benefit of the twenty-year lease period.

■ Moreover, the trial justice neither misconceived nor overlooked material evidence in concluding that Blue Ribbon had taken reasonable steps to mitigate its damages. Its unsuccessful, decade-long search for a suitable alternate site, the city's failure to establish the existence of such a site, and Blue Ribbon's years of operating at a loss out of its proprietor's home preclude us from holding that the trial justice was clearly wrong in so finding.

■ However, we sustain the city's appeal with respect to the trial justice's failure to deduct Blue Ribbon's projected renovation and improvement costs from the damage award. Blue Ribbon estimated that it would have had to expend approximately $135,000 [2] to renovate and improve its plant and cooling systems. Like the other anticipated expenses of its continuing to do business, this expense should have been deducted from the anticipated sales revenues, thereby reducing lost-profits damages. *See Long v. Atlantic PBS, Inc.*, 681 A.2d 249, 252 (R.I.1996) ("the bottom line should be the injured party's *net* lost profits after expenses are deducted"). Accordingly on remand the trial justice should enter a new judgment that deducts this projected expense (after it has been discounted to its then-present value when Blue Ribbon's damages began to accrue) from the damage award before interest is calculated.

■ Finally, because Blue Ribbon's lost profits did not start to accrue until the beginning of FY 1982 (that is, as of July 1, 1981), we believe that this is the date that should have been used to begin calculating prejudg-

ment interest and the date to which the estimated lost-profits damages should have been discounted to obtain their then-present value. Prejudgment interest generally begins from the date the cause of action accrues, *see* G.L.1956 § 9–21–10; *but see Jolicoeur Furniture Co. v. Baldelli*, 653 A.2d 740, 755 (R.I.1995) (upholding a breach of contract occurring in 1987 while delaying accrual of prejudgment interest on the resulting damages until 1989 when the plaintiffs satisfied conditions precedent to its performance thereunder).[3] Although Blue Ribbon's cause of action against the city "accrued for *statute-of-limitation purposes* on April 30, 1980," *Blue Ribbon Beef Co.*, 585 A.2d at 69 (emphasis added), its damages did not begin to accrue on the date of the breach. Accordingly, we do not believe that interest should begin to accrue on that date. *See Miller v. Dixon Industries Corp.*, 513 A.2d 597, 602–03 (R.I.1986) (holding that "for purposes of applying the interest-on-judgment statute, [the plaintiff's] claim was properly determined to have accrued on the dates on which he first could have exercised the stock options" rather than on the earlier date he alleged his employment contract was breached by his employer's failing to extend to him the stock options); *see also State of Rhode Island Department of Transportation v. Providence and Worcester Railroad Co.*, 674 A.2d 1239, 1244 (R.I.1996) (" 'because the right to receive interest on judgments was unknown at common law * * * the court will strictly construe any statute that awards interest on judgments so as not to extend unduly the changes enacted by the legislature' "); *Margadonna v. Otis Elevator Co.*, 542 A.2d 232, 235 (R.I.1988) (" § 9–21–10 * * * must be strictly construed"). In this

---

**2.** The evidence at trial was that it would cost between $125,000 and $135,000 to renovate and improve the premises if Blue Ribbon had been allowed to remain in its building pursuant to the lease. Because the amount and the nature of these projected expenditures were exclusively within Blue Ribbon's control, we use the higher figure in the range presented to calculate this cost.

**3.** Prejudgment interest "serves two purposes: it promotes early settlements, and more importantly, it compensates persons for the loss of use of money that was rightfully theirs." *Murphy v.*

*United Steelworkers of America Local No. 5705, AFL–CIO*, 507 A.2d 1342, 1346 (R.I.1986); *see also Martin v. Lumbermen's Mutual Casualty Co.*, 559 A.2d 1028, 1031 (R.I.1989) ("[s]tatutes that award prejudgment interest generally serve the dual purposes of encouraging the early settlement of claims * * * and compensating plaintiffs for waiting for recompense to which they were legally entitled"); *DiMeo v. Philbin*, 502 A.2d 825, 826 (R.I.1986) ("the Legislature's primary intention was not to add interest but to establish a device to encourage settlements of cases").

case Blue Ribbon did not begin to sustain damages for purposes of § 9–21–10 until the beginning of FY 1982 (that is, on July 1, 1981). Accordingly, after discounting the various elements of the damages to their respective values on July 1, 1981, prejudgment interest should be added to the award from July 1, 1981, the start of "the period appropriate under the circumstances." Restatement (Second) *Property* § 10.2(7) (1976).[4]

## Conclusion

The judgment below is affirmed in part and reversed in part. On remand the projected renovation and improvement costs shall be deducted from the damages awarded, and then prejudgment interest on the remainder of the award shall be recomputed, to begin on July 1, 1981. The papers in the case shall be remanded to the Superior Court so that an amended judgment may be entered consistent with this opinion.

GOLDBERG, J., did not participate.

---

**4.** Although the trial justice did not discriminate between past lost profits and future lost profits in her calculation of damages, because all damages, including future lost profits, were discounted to the date of the breach, prejudgment interest is properly calculated on the total discounted damage award. *See generally* Michael S. Knoll, *A Primer on Prejudgment Interest*, 75 Tex.L.Rev. 293, 352–53 (1996) ("[P]laintiffs would receive a double recovery if future damages were reduced to a present value as of the judgment date and then prejudgment interest were awarded on top.

* * * The proper method is to discount future damages to the date of injury using a discount rate appropriate for the project and then to calculate prejudgment interest on that award * * * ."); Dan B. Dobbs, *Dobbs Law of Remedies* § 3.7, at 365 (2d ed. 1993) ("[t]he general rule requires that all awards for future pecuniary loss must be reduced to present value"); *Navistar International Transportation Corp. v. Pleasant*, 887 P.2d 951, 959 (Alaska 1994) ("[i]f future damages were discounted back to the time of injury, it would be appropriate to allow prejudgment interest on future damages so discounted").