Robert A. BARBATO

v.

The PAUL REVERE LIFE
INSURANCE COMPANY.

No. 2000–388–APPEAL.

Supreme Court of Rhode Island.

April 10, 2002.

William A. Gosz, Providence, for Plaintiff.

Jeffrey C. Schreck, Providence, for Defendant.

Present: WILLIAMS, C.J.,
LEDERBERG, BOURCIER,
FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

The defendant, The Paul Revere Life Insurance Company, has appealed an award of prejudgment interest on a judgment for the plaintiff, Robert A. Barbato. This case came before the Supreme Court for oral argument on March 6, 2002, pursuant to an order directing the parties to show cause why the issues raised should not be summarily decided. Having reviewed the parties' memoranda, the oral arguments of counsel, and the relevant portions of the record, we hold that cause has not been shown, and we deny and dismiss the defendant's appeal.

This case arose from a dispute over a disability insurance contract. After plaintiff was involved in an automobile accident, defendant paid benefits for approximately ten months. On May 2, 1994, however, defendant informed plaintiff that it was terminating payments on the ground that plaintiff was not totally disabled. The plaintiff brought suit, and a jury found that he was entitled to monthly disability benefits from June 1994 to February 2000. After a hearing, the trial justice found that G.L.1956 § 9–21–10 required the automatic addition of 12 percent interest on payments due from the date of the breach on May 2, 1994, to the date of judgment. The trial justice denied defendant's motion for new trial as well as its motion to reconsider and modify the interest award.

On appeal, defendant argued, first, that plaintiff suffered no actual loss until June 1994 and on the date of each successive missed monthly payment thereafter. Therefore, according to defendant, each monthly payment should have been discounted to establish its value as of the date of the initial breach, before prejudgment interest was added. Second, defendant contended that the date of the breach, for purposes of calculating the interest, was June 1994, when the first payment was withheld, rather than May 2, 1994, when defendant informed plaintiff that it would stop paying. "To do otherwise gives a plaintiff an undeserved windfall" that "would be patently unfair," defendant argued. The plaintiff responded that he was entitled to interest on the entire jury verdict from the date his cause of action accrued.

Section 9–21–10(a) provides, in pertinent part:

"In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued * * *."

An award of interest pursuant to this statute is a purely ministerial act to be performed by the clerk without judicial inter-

vention. *Cardi Corp. v. State*, 561 A.2d 384, 387 (R.I.1989); *DiMeo v. Philbin*, 502 A.2d 825, 826 (R.I.1986) (per curiam). Prejudgment interest is not an element of damages but is purely statutory, peremptorily added to the award by the clerk. *DiMeo*, 502 A.2d at 826.

In support of its position, defendant cited *Miller v. Dixon Industries Corp.*, 513 A.2d 597 (R.I.1986) and *Blue Ribbon Beef Co. v. Napolitano*, 696 A.2d 1225 (R.I. 1997). *Miller* held that interest began to accrue on each stock option that should have been awarded under a breached employment contract on the date the option was first exercisable. *Miller*, 513 A.2d at 602–03. Later, *Blue Ribbon Beef Co.* held that the date of breach for purposes of calculating lost profits was the date of actual loss, and that all losses should be calculated at their present value as of the date the actual losses began. *Blue Ribbon Beef Co.*, 696 A.2d at 1229–30. *Miller* involved successive breaches of stock option contracts, whereas *Blue Ribbon Beef Co.* required an approximation of future lost profits. The damages in both cases could not have been readily determined at the time of the initial breaches.

Although we have discounted damages in certain cases, we have not specifically discounted the assessment of only the prejudgment interest on a specifically-determined jury verdict. Here, defendant insurer anticipatorily breached the contract by announcing that it would not pay the future monthly disability payments that were due to plaintiff. All of plaintiff's damages, however, did not accrue on the date of this breach. Rather, as in *Blue Ribbon Beef Co.*, most of the damages accrued after the initial breach occurred, when the insurance company failed to make each monthly payment when and as it became due. Given the periodic nature of the payments that were due to plaintiff,

this case was a prime candidate for the damage-discounting procedure that this Court approved of and applied in *Blue Ribbon Beef Co.* "The proper method is to discount future damages to the date of injury using a discount rate appropriate for the project and then to calculate prejudgment interest on that award." *Blue Ribbon Beef Co.*, 696 A.2d at 1230 n. 4 (quoting Michael S. Knoll, *A Primer on Prejudgment Interest*, 75 Tex. L.Rev. 293, 352–53 (1996)). Here, however, plaintiff has received a windfall of prejudgment interest because six years of prejudgment interest have been added to every monthly disability payment, even those that were not due and payable until one, two, or three months before this case went to trial.

■ Nevertheless, defendant failed to introduce evidence concerning the discounted value of plaintiff's alleged damages that would have enabled the jury to reduce the monthly disability payments from the amounts that were due each month between June 1994 and 2000 to their value on the date when Barbato first began to sustain damages because of defendant's failure to make the monthly payments. Thereafter, a 12 percent per annum interest rate should have been added to the discounted total present value of the monthly stream of disability payments that were due to plaintiff between June 1994 and 2000, when the case came to trial. *Id.* Because such a discount-to-present-value calculation requires the use of an appropriate discount factor as well as a factual determination of the date and value of each loss to be discounted, it is not a ministerial determination. Rather, such a calculation requires some expert assistance to aid the fact finder in arriving at the appropriate discount rate to use in discounting the monthly stream of disability payments back to what their value would have been as of June 1994. Such evidence

apparently was introduced in *Blue Ribbon Beef Co.*, but was lacking in this case. Thus, we cannot fault the trial justice or the clerk in failing to perform this calculation on their own.

In other words, the discounting of the damages to the date when they first began to accrue was a matter of proof, but was not a matter of how to calculate prejudgment interest on the damages awarded. Although the same result could have been achieved by applying the prejudgment interest rate (12 percent) to each monthly payment from the date when it was due but not paid, the better method in an anticipatory breach situation is to discount the payments to their value on the date the damages first began to accrue, *see Blue Ribbon Beef Co.*, 696 A.2d at 1229, and then to apply the prejudgment interest rate to the total sum of the discounted monthly payments. This method would allow the clerk to perform the ministerial function of adding prejudgment interest to the discounted damage award in a manner that conforms to the prejudgment-interest statute. But absent evidence or expert testimony showing why and how the damages here should have been reduced or discounted to their present value when the damages first began to accrue, neither the court nor the clerk committed reversible error by failing to reduce the damages proven to their value in 1994 before applying the appropriate prejudgment interest rate.

■ Moreover, we have recognized that in enacting § 9–21–10, "the Legislature's primary intention was not to add interest but to establish a device to encourage settlements of cases sounding in tort without undue delay," *DiMeo*, 502 A.2d at 826, and to compensate plaintiffs "for waiting for recompense to which they were legally entitled." *Martin v. Lumbermen's Mutual Casualty Co.*, 559 A.2d 1028, 1031 (R.I.

1989). To hold otherwise would be to run the risk of creating uncertainty in the calculation of prejudgment interest in numerous cases, including, as plaintiff pointed out, claims for wages or successive hospital bills. To do so would remove such calculations from the realm of purely ministerial action.

■ The defendant also moved for a new trial on the ground that the plaintiff's evidence was insufficient to establish that the accident at issue caused the injuries alleged. The defendant, however, did not appeal the denial of its new-trial motion. As this Court has consistently held, we do not reach into the trial proceedings to rescue or resuscitate issues that appellants or petitioners have declined or neglected to raise before us. To do so would violate our long-held precept of appellate jurisprudence, namely, issues raised at trial but not briefed on appeal are deemed waived. *Superior Group Ventures, Inc. v. Apollo II Sign Corp.*, 712 A.2d 359, 360 (R.I.1998) (citing Sup.Ct. R. 16(a); *O'Reilly v. Town of Glocester*, 621 A.2d 697, 707 (R.I.1993); *State v. Jamgochian*, 109 R.I. 46, 48, 280 A.2d 320, 322 (1971)). Therefore, notwithstanding possible concern over the alleged lack of evidence in this case, having declined to raise that issue on appeal, the defendant has waived its opportunity to do so.

Accordingly, for the reasons set forth above, we deny and dismiss the defendant's appeal and affirm the award of prejudgment interest. The papers of this case are remanded to the Superior Court.