DECISION
The East Providence School Committee ("School Committee") and Anne Marie Quattrucci ("Quattrucci") bring these cross-appeals from a decision of the Rhode Island Board of Regents for Elementary and Secondary Education ("Board of Regents"), finding that Quattrucci, a former tenured teacher, was entitled to back pay from 1999-2000, but not to prejudgment interest on that award. For the reasons set forth below, the Court affirms the decision of the Board of Regents. Jurisdiction is pursuant to G.L. 1956 § 42-35-15, G.L. 1956 § 16-39-4, and G.L. 1956 § 16-13-4.
 I Facts and Travel
On February 13, 1998, the Superintendent of the East Providence School Department recommended to the School Committee that Quattrucci, a tenured teacher in the East Providence School District, be terminated for cause. Quattrucci v. RhodeIsland Bd. of Regents for Elementary and Secondary Educ.
(Quattrucci I), No. PC-04-6767, 2006 WL 1628824, at *2 (Super. Ct. May 30, 2006). On April 27, 1998, the School *Page 2 
Committee notified Quattrucci of its decision terminating her employment effective May 1, 1998. Id. at *3. She was removed from the payroll on that date.
Quattrucci took a timely appeal from that decision to the Commissioner of Education ("Commissioner") pursuant to § 16-39-1. In her appeal, she averred that the School Committee lacked good cause to terminate her and that it failed to conduct a timely hearing. Id. The Commissioner affirmed the School Committee's decision to terminate Quattrucci. (Quattrucci Ex. C, Commissioner Decision, Oct. 28, 2002 ("Commissioner Decision I") at 12.) However, the Commissioner modified the effective termination date to begin at the start of the 1999-2000 school year because notice was not provided to Quattrucci by the March 1 statutory deadline.[1] Id.
The Board of Regents affirmed the decision of the Commissioner regarding Quattrucci's termination and its effective date. (School Committee Ex. D, Board of Regents Decision, Oct. 28, 2002 ("Board of Regents Decision I") at 2.) Quattrucci appealed that decision to the Superior Court. The Presiding Justice of this Court affirmed the decision of the Board of Regents and ordered that Quattrucci's employment be terminated for cause as of the start of the 1999-2000 school year.See Quattrucci I, 2006 WL 1628824, at *8. Neither party took an appeal from that decision. *Page 3 
On July 17, 2006, Quattrucci requested a hearing to address the amount due her as back pay for the period of time from May 1, 1998, when she was first removed from the payroll to the start of the 1999-2000 school year. Her claim was based upon the Superior Court decision finding that she should not have been terminated before the beginning of that school term. (Quattrucci Ex. G, Letter from John E. DeCubellis, Counsel for Quattrucci, to Kathleen Murray, Hearing Officer, July 17, 2006.)[2] A hearing was held before a Hearing Officer for the Commissioner on November 16, 2006. (Admin Hr'g Tr., Nov. 16, 2006, at 1.) Quattrucci appeared at the hearing as did her attorney and counsel for the School Committee. Id. The Hearing Officer considered arguments from both counsel but did not receive any testimony. Quattrucci offered several exhibits at the hearing documenting both the travel of the controversy and her claim for damages. The School Committee offered two exhibits, the earlier decisions of both the Board of Regents and the Presiding Justice. The parties submitted a joint exhibit documenting the amount of money that Quattrucci would have earned between May 1 and the start of the next school year had she remained on the payroll.
In her October 17, 2007 decision, the Hearing Officer first outlined the travel and issues within the matter. (School Committee Ex. B, Commissioner Decision, Oct. 17, 2007 ("Commissioner Decision II") at 1.) The Hearing Officer then made findings of *Page 4 
relevant facts and summarized the positions of the parties.Id. at 2-8. In her analysis, the Hearing Officer opined that Quattrucci's damages claims were not barred by the doctrine of res judicata because damages had not been decided in the earlier decisions and had been left open for subsequent determination.Id. at 8. She concluded that the issue of damages had been bifurcated by inference from the issues of whether she was being terminated for cause and the effective date of her termination.Id. Specifically, the Hearing Officer found that:
 "The hearing was bifurcated to separate the issue of the alleged denial of a right to prompt post-termination hearing and decision. . . . Implicit in this agreement to defer hearing on the third claim was the notion that a hearing on damages would not be held until the Commissioner's decision on the underlying claims was made. The scope of the hearing on damages would undoubtedly be affected by the rulings on the merits of the claims presented on Ms. Quattrucci's behalf." Id.
She noted that the earlier decision was devoid of direct reference to this issue and commented that "[i]n retrospect a statement to [that] effect in the decision would have been helpful."Id. However, the Hearing Officer was satisfied that she had jurisdiction to hear and decide the remaining issues in this case and that they had not been previously addressed nor barred for Quattrucci's failure to present evidence on the issues at the earlier hearings. Id.
The Hearing Officer then addressed the School Committee's argument that Quattrucci was not entitled to back pay from May 1 to the start of the following school year because, according to the School Committee, Quattrucci was constructively suspended as of May 1. The Hearing Officer rejected this argument and found that there was no legal basis on which to convert the School Committee's action to a suspension *Page 5 
even if the School Committee accepted the Superintendent's recommendation that she be terminated. Id. The Hearing Officer additionally rejected the School Committee's contention that an award of back pay is unwarranted because the gap between May 1 and the start of the following school year was merely the result of a defect in procedure and that there was just cause for termination.Id. at 9-10. Specifically, the Hearing Officer reasoned that "the task at hand is determining the amount of damages, not a `rebalancing' of the equities to shield the School Committee from the effect of the Commissioner's prior decision."Id. at 10.
The Hearing Officer found that the parties had agreed to the amount of salary that Quattrucci would have earned up to the reformed effective date of her termination, as reflected in Joint Exhibit 1. Id. She determined that Quattrucci was entitled to unpaid salary in the amount indicated on Joint Exhibit 1, offset by the amount of unemployment compensation she received and any earnings she gained from other employment during the period May 1, 1998 through the end of the 1998-1999 school year.Id. The Hearing Officer also found that the Committee must pay the retirement contributions on Quattrucci's behalf for 1998-1999, with interest owed on those amounts. Id. The Hearing Officer, however, declined to offset the back pay owed by the amounts paid for medical insurance coverage for a five-year period after Quattrucci's termination because the Committee knowingly and voluntarily extended this benefit to Quattrucci during that period. Id. She found neither unjust enrichment nor implied contract that would have entitled the School Committee to such an offset. Id.
The Hearing Officer then examined whether prejudgment interest should be included on the back pay award to Quattrucci.Id. at 11. In this analysis, she noted that *Page 6 
administrative hearings before the Commissioner involve the adjudication of both individual rights and the enforcement of education laws; hence, she found that the Commissioner may exercise latitude in fashioning an appropriate remedy. Id. According to the Hearing Officer, such latitude is "not necessarily present in the civil actions adjudicated in court proceedings to which the precedent cited by the School Committee applies." Id.
Therefore, the Hearing Officer concluded that prejudgment interest, "traditionally included in `back pay' awards in administrative proceedings [before the Commissioner of Education]" is warranted in this case. Id.
The Hearing Officer then found that the method of calculating the amount of prejudgment interest is not in dispute and, thus, she concluded that the amount of interest indicated in Quattrucci's Exhibit 3C must be paid to the Appellant. Id.
She further noted that her decision renders moot Quattrucci's claim that the Committee unreasonably delayed its post-termination hearings and a decision complying with her due process rights.Id. at 11-12. The Hearing Officer specifically found that the deferral of the effective date of her termination provided her with salary payments for the same length of time that she claims the Committee delayed in completing hearings on her termination.Id. at 11. Accordingly, the Hearing Officer concluded that the School Committee must pay Quattrucci the damages specifically described in Quattrucci's Exhibit 3C. Id. at 12.
On October 17, 2007, the Commissioner approved the decision of the Hearing Officer which awarded Quattrucci damages for her unpaid salary for the period from May 1, 1998 through the 1998-1999 school year, plus interest.Id. *Page 7 
The School Committee timely appealed this decision to the Board of Regents. On August 6, 2009, the Board of Regents issued its decision. In its decision, the Board of Regents noted that it would not disturb the Hearing Officer's findings of fact. (School Committee Ex. A., Board of Regents Decision, Aug. 6, 2009 ("Board of Regents Decision II") at 1.) Like the Commissioner, the Board of Regents noted that the original bifurcation of the matter at the Commissioner's level had caused confusion as to when the case would be deemed finally adjudicated.Id. Thus, the Board of Regents stated that the issue of jurisdiction to consider damages was a "very close call."Id. It further stated that the Board of Regents generally defers to the Commissioner's interpretations of applicable statutes and case laws so long as that interpretation accords with sound educational policy and does not defeat the underlying purpose of education laws. Id. at 1-2. Therefore, the Board of Regents affirmed the conclusion of the Commissioner which retained jurisdiction to decide the damages issue. Id. at 2.
The Board of Regents then affirmed the finding that Quattrucci was entitled to back pay with the offsets ordered by the Commissioner.Id. Specifically, it found that precedent supports the award and that back pay is based on principles of equity which are best decided by the trier of facts, the Hearing Officer in this case.Id.
The Board then considered the issue of prejudgment interest and reversed the finding that Quattrucci was entitled to such an award. In making this determination, the Board concluded that the School Committee was exercising a governmental function, not a proprietary function when it terminated Quattrucci. As such, it concluded that the School Committee had not waived its sovereign immunity. Id. The Board of Regents determined that Quattrucci's claims were governed by the Teachers' Tenure Act, and not *Page 8 
by contractual agreements. Id. The Board opined that this Act is an essential part of how a school district exercises the governmental function of properly managing its schools.Id. The Board concluded that no sound educational policy would be advanced by awarding prejudgment interest on a back pay award.Id. Thus, it concluded that governmental immunity applied to Quattrucci's claims, and as such, no prejudgment interest should have been awarded to her. Id.
The Board of Regents noted that the Commissioner made no award for post-judgment interest. Id. at 3. The Board then stated:
 "[w]e are not at all certain as to the correct forum to decide [the post-judgment interest question] — the Superior Court or the Commissioner. As noted above, jurisdictional issues have already played a principal role in this matter and we are not prepared to deal with this one without having it properly brought to use in the regular process for appeals." Id.
The Board of Regents concluded it would defer the issue of post judgment interest to the Court. Id. Accordingly, the Board of Regents affirmed the award of back pay and reversed the award of prejudgment interest. Id. The decision was issued on August 17, 2009.
On August 20, 2009, the School Committee took a timely appeal from the Board's decision to this Court. In its appeal, the School Committee argues that Quattrucci's claims were barred by the doctrine of res judicata, and as such, the Commissioner lacked jurisdiction to hear the matter. Furthermore, the School Committee maintains that the Board of Regents' decision was clearly erroneous because Quattrucci was terminated for cause, to wit, unsatisfactory performance, and she should not be awarded back pay. The School Committee avers that the equities significantly weigh *Page 9 
against awarding her back pay. It further contends that this Court should affirm the Board of Regents' decision that Quattrucci is not entitled to interest based upon the doctrine of sovereign immunity.
On September 11, 2009, Quattrucci filed a timely cross appeal of the Board of Regents' decision. In her appeal, she argues that this Court should affirm the award of back pay because she properly preserved the issue of damages for subsequent determination by the Commissioner. Quattrucci disputes the decision of the Board of Regents as it relates to prejudgment interest. She claims that such an award achieves an equitable result, and the Board committed an error of law in denying it to her. Thus, Quattrucci argues that this Court should affirm the Board of Regents' award of back pay and reverse the Board of Regents' denial of prejudgment interest on back pay.
 II Standard of Review
Section 16-39-4[3] allows any party aggrieved by a decision of the Board to obtain judicial review of that decision in accordance with "chapter 35 of title 42," the Rhode *Page 10 
Island Administrative Procedures Act. Section 42-35-15 provides this Court with the specific authority to review decisions of administrative agencies, such as the Board. Section 42-35-15(g) provides that:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." Sec. 42-35-15(g).
In such a review, this Court is limited to an examination of the certified record in deciding whether the agency's decision is supported by substantial evidence. Johnston Ambulatory SurgicalAssocs. v. Nolan, 755 A.2d 799, 804-05 (R.I. 2000) (quotingBarrington Sch. Comm. v. Rhode Island State Labor RelationsBd., 650 A.2d 479, 485 (R.I. 1994)). The Rhode Island Supreme Court has defined substantial evidence as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Town of Burrillville v. Rhode Island State LaborRelations Bd., 921 A.2d 113, 118 (R.I. 2007). In reviewing an agency decision a "Superior Court trial justice `shall not substitute [his or her] judgment for that of the agency as to the weight of the evidence on questions of fact.'" InterstateNavigation Co. v. Div. of Pub. Utils. Carriers of R.I.,824 A.2d 1282, 1286 (R.I. 2003) *Page 11 
(citing Rocha v. State Pub. Utils. Comm'n,694 A.2d 722, 725 (R.I. 1997) (quoting § 42-35-15(g))). Accordingly, only where "factual conclusions of administrative agencies . . . are totally devoid of competent evidentiary support in the record may the Superior Court reverse." Baker v. Department of Emp't andTraining Bd. of Review, 637 A.2d 360, 363 (R.I. 1994) (quotingMilardo v. Coastal Res. Mgmt. Council,434 A.2d 266, 272 (R.I. 1981)). However, the Court is free to conduct de novo review of determinations of law made by the agency.Arnold v. Dep't of Labor and Training Training Bd. ofReview, 822 A.2d 164, 167 (R.I. 2003) (citing Nolan,755 A.2d at 805).
 III Analysis A Back Pay 1 Jurisdiction
The School Committee argues that the Commissioner lacked jurisdiction to hear the issue of back pay because the Superior Court's decision in Quattrucci I was final on the issues of Quattrucci's employment with the School Department. Additionally, the Committee avers that the raise or waive doctrine bars Quattrucci's claim for back pay because she should have argued that claim prior to the Court entering its first judgment. In response, Quattrucci asserts that the issues were bifurcated prior to Quattrucci I because the amount of damages could have changed drastically based on the outcome of the first appeal.
Res judicata, also referred to as claim preclusion, "`bars the relitigation of all issues that were tried or might have been tried in the original suit * * *.'" Bossian v.Anderson, *Page 12 991 A.2d 1025, 1027 (R.I. 2010) (omission in original) (emphasis omitted) (quoting Carrozza v.Voccola, 962 A.2d 73, 78 (R.I. 2009)) (citing E.W.Audet Sons, Inc. v. Fireman's Fund Ins. Co. of Newark, N.J.,635 A.2d 1181, 1186 (R.I. 1994)). Thus, this doctrine is an "absolute bar" to a second cause of action where there exists the "`identity of parties, identity of issues, and finality of judgment in an earlier action.'" Id. (quoting In re Sherman,565 A.2d 870, 872 (R.I. 1989)) (citing Palazzo v. Alves,944 A.2d 144, 152 (R.I. 2008); Garganta v. Mobile Village,Inc., 730 A.2d 1, 4 (R.I. 1999); ElGabri v. Lekas,681 A.2d 271, 275 (R.I. 1996)).
In the present case, identity of parties exists because Plaintiff and Defendants were the opposing parties in Quattrucci I.See id. The element of finality of judgment has been met in this case because the judgment entered by the Superior Court became final when no appeal was taken. See id. (citingIn re Dissolution of Anderson, Zangari Bossian,88 A.2d 973, 975 (R.I. 2006)).
To determine the remaining element, identity of issues, Rhode Island courts use the "`transactional rule governing the preclusive effect of the doctrine of res judicata * * *.'" Id.
(omission in original) (quoting DiBattista v. State,808 A.2d 1081, 1086 (R.I. 2002)) (citing Lennon v. DacomendCorp., 901 A.2d 582, 592 (R.I. 2006); Ritter v. MantissaInv. Corp., 864 A.2d 601, 605 (R.I. 2005)). This rule provides that "all claims arising from the same transaction or series of transactions which could have properly been raised in a previous litigation are barred from a later action." DiBattista,808 A.2d at 1086 (citing ElGabri, 681 A.2d at 276);see also Restatement (Second)Judgments § 24 (1980) ("[T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected *Page 13 
transactions, out of which the action arose."). To determine what facts constitute a transaction or series of transactions, a court will pragmatically give weight "`to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations * * *.'"Ritter,864 A.2d at 605 (quoting ElGabri, 681 A.2d at 276).[4]
Nevertheless, exceptions to this transactional approach exist. These exceptions include the following:
 "(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
 (a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein; or
 (b) The court in the first action has expressly reserved the plaintiff's right to maintain the second action; or
 . . . ." Restatement (Second) Judgments § 26; see also Plunkett v. State, 869 A.2d 1185, 1190 (R.I. 2005) (recognizing this section); ElGabri, 681 A.2d at 277 (recognizing this section).
These exceptions serve the main purpose of the general transactional rule of § 24, "to protect the defendant from being harassed by repetitive actions based on the same claim."ElGabri, 681 A.2d at 277 (citing Restatement (Second)Judgments § 26, cmt. a). *Page 14 
In the Commissioner's decision in Quattrucci I, the Hearing Officer stated that
 "the original letter of appeal to Commissioner McWalters raised the issue of compliance by the School Committee with Ms. Quattrucci's right to a full and timely post-termination hearing, the parties agreed to defer hearing on this issue and place before the Commissioner the issues of whether there was just cause for her dismissal and whether notice of her dismissal was timely under state law." (Commissioner Decision I at 1.)
Thus, in that case, the parties agreed to defer hearings on certain issues for the preliminary issues to be resolved. In the Commissioner's decision on the instant matter, the Hearing Officer found that
 "[i]mplicit in this agreement to defer hearing on the third claim was the notion that a hearing on damages would not be held until the Commissioner's decision on the underlying claims was made. The scope of the hearing on damages would undoubtedly be affected by the rulings on the merits of the claims presented on Ms. Quattrucci's behalf." (Commissioner Decision II at 8.)
Accordingly, the Hearing Officer recognized that the Commissioner could not determine damages until all of the issues on the merits were resolved.
Although this matter may satisfy the identity of issues under the transactional approach, the exceptions listed in § 26 of the Restatement (Second) of Judgments apply. Specifically, the parties agreed that Quattrucci could split her claims, according to the Commissioner's decision in Quattrucci I. See Restatement (Second) Judgments § 26[1][a]; Commissioner Decision I at 1. Thus pursuant to § 26, claim preclusion is inappropriate because the parties agreed to bifurcate the issues, and Quattrucci could not have brought claims for damages when the claims had previously been bifurcated. See Restatement (Second)Judgments § 26; Wright and Miller Federal Practice and Procedure § 4415 ("Preclusion is inappropriate, for example, as to matters that could not be *Page 15 
advanced in the first action."). Additionally, as the Commissioner expressly reserved Quattrucci's right to maintain the next action, this action for damages cannot be barred by res judicata.See Restatement (Second)Judgments § 26 cmt. b (stating that in that circumstance, "the plaintiff should be left with an opportunity to litigate in a second action that part of the claim which he justifiably omitted from the first action"). As the claims were bifurcated by agreement in Quattrucci I, this claim does serve to harass the School Committee by repetitive actions based on the same claim. See ElGabri, 681 A.2d at 277 (R.I. 1996) (citing Restatement (Second) Judgments § 26, cmt. a). Accordingly, these claims are not barred by res judicata, and are properly before this Court.[5]
 2 Collateral Estoppel
The School Committee further argues that Quattrucci is not entitled to back pay because she was found to be an unsatisfactory teacher. It avers that back pay is inappropriate because the notice violation was merely procedural and did not violate her substantive rights.
Courts have denied reinstatement and back pay to probationary teachers who were dismissed because the violation was merely procedural and their substantive rights were *Page 16 
not affected. See, e.g., In re Arbitration BetweenLiberty Cent. Sch. Dist. and Liberty Faculty Assoc.,808 N.Y.S.2d 445, 447 (N.Y. App. Div. 2006) ("We previously have held that in instances where the procedural requirements of [the Education Law] have not been complied with and where, as where, there is no showing that substantive rights have been violated in the dismissal of a probationary teacher, it is improper to reinstate such teacher nuc pro tunc because of such procedural defect." (citations omitted)); Schaub v. Chamberlain Bd. of Educ.of Chamberlain Sch. Dist. No. 7-1,339 N.W.2d 307, 310 (S.D. 1983) (finding that "a violation by the Board of a rule does not in and of itself justify reinstatement of the teacher," rather "[t]he test in determining whether reinstatement is the proper remedy for a violation of teacher evaluation statutes is `whether a grievant has shown that the violation substantially and directly impaired his or her ability to improve himself or herself and attain continuing contract status'" (citation omitted)); Rathbone v. Board of Educ. of theHamilton Cent. Sch. Dist., Madison Cty.,365 N.Y.S.2d 909, 912 (N.Y. App. Div. 1975) ("We must recognize the injustice and impropriety of awarding a probationary teacher unearned back pay for a lengthy period of time when [sic] in all likelihood the dismissal of that teacher violated no substantive rights."). The teachers in those cases, unlike Quattrucci, were probationary, not tenured teachers. See, e.g., In reArbitration between Liberty Cent. Sch. Dist. and Liberty FacultyAssoc., 808 N.Y.S.2d at 447; Schaub, 339 N.W.2d at 310;Rathbone, 365 N.Y.S.2d at 912. Although no substantive right was affected, courts, nevertheless, have ordered back pay for teachers protected by tenure statutes for the period between the initial invalid determination and the subsequent determination which found dismissal appropriate. Sinicropi v. Bennett,460 N.Y.S.2d 809, 815 (N.Y. App. Div. 1983). This is consistent with the Teachers' *Page 17 
Tenure Act which provides a specific scheme for the dismissal of tenured teachers. Sec. 16-13-4.
Similarly, the School Committee argues that Quattrucci was found to be incompetent and this finding was affirmed by the Superior Court; therefore, Quattrucci's substantive rights were not violated. Quattrucci, however, is a tenured teacher, not a probationary teacher, like the teachers in the School Committee's cited cases. Additionally, in Quattrucci I, the court found that the Board of Regents correctly established the effective date as the beginning of 1999-2000 school year. See QuattrucciI, 2006 WL 1628824, at *8. Thus, ruling that the procedural defect does not allow for back pay would overrule that effective date.
The doctrine of collateral estoppel, [6] also referred to as issue preclusion, "`makes conclusive in a later action on adifferent claim the determination of issues that were actually litigated in a prior action.'" Cronan v. Iwon,972 A.2d 172, 174 (R.I. 2009) (mem.) (quoting Foster-GlocesterRegional Sch. Comm. v. Board of Review,854 A.2d 1008, 1014 n. 2 (R.I. 2004)). This doctrine applies when: "(1) the party against whom *Page 18 
collateral estoppel is sought is the same or in privity with a party in the previous proceeding; (2) the previous proceeding resulted in a final judgment on the merits; and (3) there is an identity of issues." Id. at 174-75 (citing State v. Gautier,871 A.2d 347, 358 (R.I. 2005); State v. Werner,865 A.2d 1049, 1055 (R.I. 2005); Foster-Glocester RegionalSch. Comm., 854 A.2d at 1014). Courts, however, will not employ collateral estoppel when its application produces inequitable results. Id. at 174 (citations omitted); CascoIndem. Co. v. O'Connor, 755 A.2d 779, 782 (R.I. 2000) (citingParklane Hosiery Co. v. Shore, 439 U.S. 322, 330 (1979)).
Collateral estoppel is applicable to this issue because all three elements are present.[7] See id. First, the parties are identical to those in the previous proceeding. Seeid.; Foster-Glocester Sch. Comm., 854 A.2d at 1014-15. Second, a final judgment was issued on the merits in QuattrucciI. See Cronan, 972 A.2d at 175. Finally, in issuing its decision, the Quattrucci I court found that Quattrucci was not terminated until the beginning of the 1999-2000 school year. Certainly, improperly removing an employee from a payroll violates the employee's substantive rights. For the Court to now rule that such removal did not violate Quattrucci's substantive rights would do violence to the final decision of the Superior Court in Quattrucci I. As the date of her termination has already been determined under the law in Quattrucci I, the parties cannot now re-litigate that issue.[8] Seeid. Accordingly, collateral estoppel bars this Court's consideration of the *Page 19 
School Committee's argument that this procedural violation does not warrant back pay because no violation of substantive rights occurred.
The School Committee further argues that Quattrucci's dismissal was, in fact, a constructive suspension until it became effective and therefore, the decision of the Board of Regents is affected by an error of law. In support of its argument, the School Committee cites the Rhode Island Supreme Court's sole mention of a constructive suspension in which it stated "[e]ven a constructive suspension requires that an individual be denied pay during the period in question." Matrone v. Johnston Sch. Comm.,824 A.2d 426, 432 (R.I. 2003) (citing Perez v. Merit SystemsProtection Bd., 931 F.2d 853, 855 (Fed. Cir. 1991) (defining constructive suspension as certain personnel actions that result in an employee's loss of duties and pay)).
Similar to the School Committee's previous argument, collateral estoppel governs this outcome because all three requisite factors are present. The first and second requirements are met because the parties are identical and the Quattrucci I court reached a final judgment on the merits. See Cronan,972 A.2d at 175. The third factor, identity of issues, is also met due to the Quattrucci I court's consideration of Quattrucci's termination date, specifically that she was terminated as of the beginning of the 1999-2000 school year. Considering whether Quattrucci was suspended prior to that date would require the parties to re-litigate the Quattrucci I issue of the termination date. See *Page 20 id. As a result of collateral estoppel, this Court cannot permit the School Committee to re-litigate the effective date of Quattrucci's termination.
 3 Back Pay as an Equitable Remedy
The School Committee further argues that Quattrucci is not entitled to back pay because the equities strongly weigh against back pay. In contrast, Quattrucci avers that she is entitled to back pay because the equities weigh in favor of back pay.
Back pay is an equitable remedy aimed to compensate the plaintiff.See, e.g., Selgas v. American Airlines, Inc.,104 F.3d 9, 12 (1st Cir. 1997) (including back pay as a form of equitable relief available under Title VII); Am. Jur. 2d Damages § 141 ("An award of back pay is an equitable remedy designed to make an injured party whole."). Additionally, administrative agencies have significant latitude when imposing penalties. Am. Jur. 2d Admin.Law § 453 (2010). Penalties are particularly left to the agency to make the determination because of its "special competence."Id. The Rhode Island Supreme Court has further explained that the reviewing court may not decide whether the department chose the right sanctions or penalties, but rather whether the sanctions were based on "any competent record evidence." Rocha,694 A.2d at 726; see also Broad St. Food Mkt.,Inc. v. U.S.,720 F.2d 217, 220 (1st Cir. 1983) (citations omitted) (finding that a court should review agency sanctions in light of the administrative record to judge whether "the sanction is `unwarranted in law . . . or without justification in fact'").
Moreover, the instant appeal process involves two-tiers in which a hearing officer hears the appeals and then issues a written decision, which is approved by the Commissioner and then submitted to the Board of Regents. Sec. 16-39-2. The Board of *Page 21 
Regents then considers the decision as well as any further briefs, and subsequently renders its own decision. Sec. 16-39-3. This two-tier system is similar to a funnel, in which the Hearing Officer "sits as if at the mouth of the funnel" and analyzes the evidence, issues, and live testimony." Environmental ScientificCorp. v. Durfee, 621 A.2d 200, 207 (R.I. 1993). At the second level of review, the "discharge end" of the funnel, the Board only considers evidence that the Hearing Officer received first-hand.Id. Thus, the Rhode Island Supreme Court held that the "further away from the mouth of the funnel that an administrative official is . . . the more deference should be owed to the fact finder." Id.
When considering this remedy, the Hearing Officer in Commissioner Decision II found that the decision in QuattrucciI — which deferred the termination date, rather than reinstating Quattrucci — demonstrates that "the Commissioner has already taken into account the `equities of the case.'" (Commissioner Decision II at 10.) Therefore, the Hearing Officer declined to "re-balance" the equities to protect the School Committee from the consequences of Quattrucci I.Id. In affirming this decision on back pay, the Board of Regents noted that "such awards are based on principles of equity best weighed by the trier of the facts — here the Commissioner's Hearing Officer." (Board of Regents Decision II at 2.) Indeed, theQuattrucci I Court found that the Board of Regents' decision furthered the stated policy objectives of § 16-13-3 by effectuating Quattrucci's dismissal at the start of the 1999-2000 school year.Quattrucci I, 2006 WL 1628824, at *6. As the Commissioner properly considered the equities in Quattrucci I and this matter, this Court finds probative, reliable, and substantial evidence on the whole record to support the Commissioner and Board of Regents' decision. Rocha, 694 A.2d at 726; *Page 22 
Commissioner Decision I at 12 ("[E]ven though there was good and just cause for dismissal of Anne Marie Quattrucci, the date on which the School Committee acted to terminate her employment was beyond the March 1st deadline provided in state law. Thus, her dismissal can be effective no earlier than the beginning of school year 1999-2000.") Accordingly, this Court affirms the Board of Regents' decision granting Quattrucci back pay.
 B Prejudgment Interest
In her appeal, Quattrucci contends that the Board of Regents' determination that she is not entitled to prejudgment interest on the back pay award is clearly erroneous. She specifically avers that her claim against the Committee was not based on statutory rights, but instead was based upon a breach of contract.
Section 9-21-10 provides in pertinent part that
 "In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein. Post-judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein. This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided." G.L. 1956 § 9-21-10
Thus, prejudgment interest "`is not an element of damages but is purely statutory, peremptorily added to the award by the clerk.'"Metropolitan Prop. and Cas. Ins. Co. v. Barry,892 A.2d 915, 919 (R.I. 2006) (quoting Barbato v. Paul RevereLife Ins. Co., 794 A.2d 470, 471-72 (R.I. 2002)). It is meant to encourage settlement and to compensate a *Page 23 
plaintiff for any delay in the receipt to compensation to which he or she may be entitled. Id. (citing Martin v. Lumbermen'sMut. Casualty Co., 559 A.2d 1028, 1031 (R.I. 1989)). This statute specifically requires that a judgment for pecuniary damages be made in a civil action. Our Supreme Court has explicitly found that "administrative appeals are not civil actions within the meaning of the Rules of Civil Procedure." Gott v. Norberg,417 A.2d 1352, 1357 n. 6 (R.I. 1980) (citing Notre DameCemetery v. Rhode Island State Labor Relations Bd.,118 R.I. 336, 373 A.2d 1194 (1977)). Specifically, when the General Assembly added the words "civil action" to § 9-21-10, it intended merely "`to equalize the right of tort and contract litigants to collect interest on judgments,'" not to grant awards from an administrative review. In re Estate of Cantore,814 A.2d 331, 335 (R.I. 2003). Accordingly, this action, appealed from an administrative review, is not a civil action and, therefore, prejudgment interest is not warranted. See Gott,417 A.2d at 1357.[9]
Even if this matter was a "civil action," as required under § 9-21-10, prejudgment interest is inappropriate in this case because it is a matter neither based in contract nor based on a statute which provides for a prejudgment interest award. The doctrine of sovereign immunity "generally insulates municipalities from assessments of prejudgment *Page 24 
interest unless waived `by express statutory language or by necessary implication there from.'" John Rocchio Corp. v. Town ofCoventry, 919 A.2d 418, 419 (R.I. 2007) (mem.) (quotingReagan Const. Corp. v. Mayer, 712 A.2d 372, 373 (R.I. 1998)). Prejudgment interest, however, may be "`awarded against a municipality on a breach of contract claim where a municipality acts in a proprietary or enterprise capacity.'"[10] Id. (quotingFleet Contr. Co. v. Town of N. Smithfield,713 A.2d 1241, 1245 (R.I. 1998)); see alsoNorth Smithfield Teachers Ass'n., 461 A.2d at 934 (finding that § 9-21-10 applies to judgments against municipalities for breach of contract). A proprietary function is "`one which is not so intertwined with governing that the government is obligated to perform it only by its own agents or employees.'" Housing Auth.of Providence v. Oropeza, 713 A.2d 1262, 1263 (R.I. 1998) (quoting Lepore v. Rhode Island Pub. Transit Auth.,524 A.2d 574, 575 (R.I. 1987)). Thus, the Court is to consider "`whether the activity [at issue] was one that a private person or corporation would be likely to carry out.'" Id.
(alteration in original) (quoting DeLong v. Prudential Prop. andCas. Ins. Co., 583 A.2d 75, 76 (R.I. 1990)). Notably, inNorth Smithfield Teachers Association, our Supreme Court reasoned that the town of North Smithfield was liable for prejudgment interest when the Superior Court found that the teachers must be compensated in accordance with their collective bargaining agreement because the municipality had acted in a proprietary capacity when it breached that contract. See 461 A.2d at 934.
This matter was brought pursuant to the Teachers' Tenure Act, not the applicable collective bargaining agreement. In QuattrucciI, Quattrucci argued that the School *Page 25 
Committee did not provide her with sufficient notice under § 16-13-3.[11] Moreover, she originally brought the appeal of her termination to the Commissioner pursuant to § 16-39-1, [12] instead of following the arbitration scheme provided for within her collective bargaining agreement.[13] Thus, this case is plainly distinguishable from North SmithfieldTeachers Association because, in that case, the municipality had explicitly violated the collective bargaining agreement; therefore, the matter involved a breach of contract. See Webster v.Perrotta, 774 A.2d 68, 82 (R.I. 2001) (finding that a case in which no plaintiff could pursue a claim through the grievance procedure of the collective bargaining agreement is "markedly different from . . . North Smithfield Teachers Association" because that case "concerned a breach of contract"). In contrast, this matter does not involve a breach of contract where a municipality acts in a proprietary capacity because Quattrucci is alleging a breach of the statute, not of the CBA. Seeid.; see also Webster v. Perrotta,774 A.2d 68, 87-88 (Flanders, J. Dissent) ("[I]mplicit in our holding in North *Page 26 Smithfield — that the town was liable for prejudgment interest because of its breach of contract — is the conclusion that when a municipality contracts with and then breaches its agreement with a public teachers association it has engaged in a proprietary rather than governmental function.").
Furthermore, the hiring and firing of teachers pursuant to the tenure statute is a governmental function because a private person or corporation would not carry it out. See Housing Auth. ofProvidence, 713 A.2d at 1263; Chakuroff v. Boyle,667 A.2d 1256 1258 (R.I. 1995) ("It is our opinion that the operation and the maintenance of a public school is a governmental function and not a proprietary one." (citing Saunders v.State, 446 A.2d 748, 751 (R.I. 1982))); Webster,774 A.2d at 87-88 ("Just as exercising police power is a governmental function, we have held that providing public education is a governmental function and not a proprietary one" (citations omitted) (internal quotations omitted)). This conclusion is consistent with the circumstances held to be proprietary and those held to be governmental. CompareOropeza, 713 A.2d at 1263 (finding that security within and by the housing authority is proprietary); DeLong v. Prudential Prop.and Casualty Ins. Co., 583 A.2d 75, 76 (R.I. 1990) (finding that operation of a beach is a proprietary function);Lepore, 524 A.2d at 575 (maintaining a public transportation authority is proprietary); Zavier v. Cianci,479 A.2d 1179, 1172 (R.I. 1984) (finding that street sweeping is a proprietary function), with L.A. Realty v. Town Council ofCumberland, 698 A.2d 202, 209 (R.I. 1997) (finding adoption and application of a zoning ordinance to be a governmental function);Chakuroff, 667 A.2d at 1258 (finding the operation and maintenance of a public school to be a governmental function). Thus, even if this matter was a "civil action," prejudgment interest is inappropriate. Accordingly, *Page 27 
this Court finds that the Board of Regents' decision regarding prejudgment interest is not clearly erroneous or an error of law.
 C Post-Judgment Interest
Quattrucci further argues that she is entitled to post-judgment interest because the Board of Regents' Decision II made no specific findings on this interest and consequently, affirmed the award of post-judgment interest by the Commissioner. In response, the School Committee maintains that no final judgment for damages has yet to be entered in this case and post-judgment interest accrues only from that date.
In the Commissioner's decision, the Hearing Officer stated that "[a]t the time of hearing on the issue of damages, interest of $46,231.08 had accrued on the principal amount owed to Ms. Quattrucci by the East Providence School Committee, with additional interest accruing at a rate of $16.10 per day from December 1, 2006." (Commissioner Decision II at 3.) This calculation was taken from Appellant's Exhibit 3C. Id.
Quattrucci avers that this statement proves that the Commissioner applied post-judgment interest to the award. Nevertheless, that interpretation is dependent on a "final judgment" being entered.[14]
Although § 9-21-8 provides for post-judgment interest to be added to a money judgment, it applies to cases where final judgment has already entered. As previously stated, Quattrucci is not entitled to recover prejudgment interest. Nonetheless, we do look *Page 28 
to § 9-21-10 for guidance in determining when post-judgment interest begins accruing. Rhode Island Insurers' Insolvency Fund v.Leviton Mfg. Co., Inc., 813 A.2d 47, 49 (R.I. 2003) (citingCardi Corp. v. State, 561 A.2d 384, 388 (R.I. 1989)). Pursuant to § 9-21-10, an "entry of judgment" is necessary for post-judgment interest to accrue. This statute, therefore, "`contemplates a final judgment, one that finally adjudicates the rights of the parties, whether it is a judgment from which no appeal is taken or a judgment that is affirmed by this [C]ourt after consideration and rejection of the appellant's contentions.'" Id. (alteration in original) (quoting Bradford Dyeing Ass'n, Inc. v. J. Stog Tec GMBH,809 A.2d 468, 471 (R.I. 2002) (per curiam)). A final judgment "`occurs when the trial court enters judgment, if the debtor has not filed a timely notice of appeal, or when this Court affirms the judgment on appeal, whichever event first occurs.'" Id.
(quoting Bradford Dyeing Ass'n, Inc., 809 A.2d at 471). This Court is only now establishing the final rights of the parties. As a result, the requisite final judgment has not yet been entered in this matter and, the issue of post-judgment interest is premature.
Nonetheless, to provide the parties with guidance, this Court will address the issue of whether Quattrucci will be able to recover post-judgment interest under § 9-21-8 once her judgment becomes final. As it relates to the defense of sovereign immunity, this Court sees no distinction between the award of prejudgment interest and post-judgment interest. Although the Rhode Island Supreme Court has not specifically ruled on the question of whether a party can recover post-judgment interest in a case where prejudgment interest is barred by the doctrine of sovereign immunity, the language in other decisions suggests that if faced with the issue, our Supreme Court would find that the doctrine applies equally to claims under § 9-21-8 as it does to such claims under § 9-21-10.See, e.g., *Page 29 Reagan Const. Corp. v. Mayer,712 A.2d 372, 374 n. 2 (R.I. 1998) (discussing the prejudgment interest concept of sovereign immunity in the context of post-judgment interest); Andrade v. State,448 A.2d 1293, 1295-96 (R.I. 1982) (employing post-judgment interest jurisprudence to establish sovereign immunity from prejudgment interest).
 IV Conclusion
After a review of the entire record, this Court finds that the decision of the Board of Regents is supported by reliable, probative, and substantial evidence and is not affected by error of law. The Board of Regents' decision is not arbitrary or capricious and did not constitute an abuse of discretion. Appellants' substantial rights have not been prejudiced. For the reasons above, this Court affirms the Board of Regents' decision awarding Quattrucci back pay and denying Quattrucci prejudgment interest. Counsel shall submit the appropriate judgment for entry.
[1] This March 1 deadline is set forth in G.L. 1956 § 16-13-3, which provides in pertinent part:
 "Whenever a tenured teacher in continuous service is to be dismissed, the notice of the dismissal shall be given to the teacher in writing on or before March 1st of the school year immediately preceding the school year in which the dismissal is to become effective. The teacher shall be furnished with a complete statement of the cause(s) for the dismissal by the governing body of the school and shall be entitled to a hearing and appeal pursuant to the procedure set forth in § 16-13-4." § 16-13-3(a)
[2] Additionally, on December 22, 2006, Quattrucci inquired to the Superior Court how to proceed to resolve the issue of damages. (Quattrucci Ex. N, Letter from John E. DeCubellis, Counsel for Quattrucci, to Presiding Justice Rodgers, Dec. 22, 2006). In this letter, Quattrucci sought to remedy any issues involving jurisdiction. Id. In response, Presiding Justice Rodgers responded that "[t]he Superior Court has no authority to grant your motion to remand to the Commission for hearing on damages. . . . [T]he Court responded to its legal obligation and affirmed the decision of the Commission. There is nothing for this Court to act upon." (Quattrucci Ex. P, Letter from Presiding Justice Rodgers to John E. DeCubellis, Counsel for Quattrucci, Jan. 5, 2007.)
[3] Section 16-13-4(a) also provides the following:
 "The statement of cause for dismissal shall be given to the teacher in writing by the governing body of the schools at least one month prior to the close of the school year. The teacher may, within fifteen (15) days of the notification, request in writing a hearing before the full board. The hearing shall be public or private, in the discretion of the teacher. Both teacher and school board shall be entitled to be represented by counsel and to present witnesses. The board shall keep a complete record of the hearing and shall furnish the teacher with a copy. Any teacher aggrieved by the decision of the school board shall have the right of appeal to the department of elementary and secondary education and shall have the right of further appeal to the superior court."
[4] In this sense, a transaction is a "common nucleus of operative facts," in which the relevant factors include whether the facts are related "in time, space, origin, or motivation, and whether taken together, they form a convenient unit for trial purposes." Restatement (Second)Judgments § 24, cmt. b.
[5] The School Committee further argues that the raise-or-waive doctrine bars Quattrucci's claim for back pay damages because she should have argued her claim for back pay prior to the Court entering a judgment in Quattrucci I. The raise-or-waive doctrine, however, is inapplicable to this case because that doctrine involves the waiver of an argument if it was not raised in a lower court, not another matter. See State v.Forand, 958 A.2d 134, 141 (R.I. 2008) ("This Court's well settled `raise or waive' rule precludes us from considering at the appellate level issues not properly presented before the trial court.");Harvey Realty v. Killingly Manor Condo. Ass'n,787 A.2d 465, 467 (R.I. 2001) ("`It is well settled that [the Rhode Island Supreme Court] will not consider on appeal an issue that was not raised before the trial court.'" (quoting Rhode IslandDepositors Econ. Prot. Corp. v. Rignanese,714 A.2d 1190, 1196-97 (R.I. 1998))).
[6] Although the School Committee argued the issue of res judicata, this Court has raised the issue of collateral estoppelsua sponte because "the demands of `comity, continuity in the law, and essential justice' mandate invocation of preclusion principles." See Transclean Corp. v. Jiffy Lube Int'l,Inc., 474 F.3d 1298, 1308 (Fed Cir. 2007) (quotingTransclean Corp. v. Bill Clark Oil, Co., Inc., No. 02-1138, 2005 WL 2406036, at *2 (D. Minn. Sept. 29, 2005));see, e.g., Arizona v. California,530 U.S. 392, 412 (2000) ("`[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte, even though the defense has not been raised. This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but it is also based on the avoidance of unnecessary judicial waste.'" (quotingUnited States v. Sioux Nation,448 U.S. 371, 432 (1980) (Rehnquist, J., dissenting)));Hanig v. City of Winner, 527 F.3d 674 (8th Cir. 2008) ("[T]he district court properly invoked res judicata to avoid `unnecessary judicial waste'. . . ." (citations omitted)); TroyCorp. v. Schoon, 959 A.2d 1130, 1134 n. 7 ("[T]he court may raise issues of collateral estoppel suasponte." (citations omitted)).
[7] Although this Court rejected the argument that this matter was barred under res judicata, collateral estoppel can still apply to the within issues. See Foster-Glocester RegionalSch. Comm., 854 A.2d at 1014 n. 2. Specifically, collateral estoppel "may apply even if the claims asserted in the two proceedings are not identical." Id.
[8] In determining this issue within collateral estoppel, courts must balance the "desire not to deprive a litigant of an adequate day in court [and the] desire to prevent repetitious litigation of what is essentially the same dispute." Restatement (Second)Judgments § 27 cmt. c. Factors involved in this consideration include "[c]ould pretrial preparation and discovery relating to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?" and "[h]ow closely related are the claims involved in the two proceedings." Id. As the issue in Quattrucci I involved the date of termination, the School Committee has had "an adequate day in Court"; therefore, this Court declines the opportunity to re-litigate the issue of the termination date.
[9] Moreover, the School Committee argues that statutory prejudgment interest is not warranted because § 9-21-10 does not apply to an award made in the form of equitable relief. While the Rhode Island Supreme Court has yet to explicitly address whether § 9-21-10 applies to equitable awards, the First Circuit has declined to grant prejudgment interest to equitable relief under this statute because the Rhode Island Supreme Court has construed the statute to apply solely to actions based in tort or contract.See Dennis v. Rhode Island Hosp. Trust Nat'l Bank,744 F.2d 893, 901 (1st Cir. 1984) (citations omitted) (finding that as plaintiffs lost nothing "`waiting for the recompense to which they were legally entitled,'" neither the purpose nor the language of the statute requires prejudgment interest on an equitable remedy (quoting Lombardi v. MerchantsMut. Ins. Co., 429 A.2d 1290, 1293 (R.I. 1981))), abrogated onother grounds, Salve Regina College v. Russell,499 U.S. 225 (1991).
[10] In a contract action, if the contract does not provide for prejudgment interest, the clerk shall apply the statutory rate of interest to an award for damages pursuant to § 9-21-10.Ouellette v. Filippone, 745 A.2d 161, 165 (R.I. 2000) (citing § 9-21-10; North Smithfield Teachers Assoc. v. N.Smithfield Sch. Comm., 461 A.2d 930, 934 (R.I. 1983)).
[11] Section 16-13-3(a) states in pertinent part: "Whenever a tenured teacher in continuous service is to be dismissed, the notice of the dismissal shall be given to the teacher in writing on or before March 1st of the school year immediately proceeding the school year in which the dismissal is to become effective."
[12] Section 16-39-1 provides the following:
 "Parties having any matter of dispute between them arising under any law relating to schools or education may appeal to the commissioner of elementary and secondary education who, after notice to the parties interested of the time and place of hearing, shall examine and decide the appeal without cost to the parties involved."
[13] Section 16-13-2 provides that a teacher's contract "shall be deemed continuous unless the governing body of the school shall notify the teacher in writing on or before March 1 that the contract for the ensuing year will not be renewed." Quattrucci, therefore, argues that the Committee breached her CBA by not providing the salary owed to her under the agreement. Although the CBA provides for the salary to be paid to Quattrucci, her claim is plainly based in statute, not on the applicable CBA. Indeed, Quattrucci's sole mention of the CBA is within this argument.
[14] When confronted with this issue, the Board of Regents stated that "[t]he Commissioner's decision that is the subject of this appeal limited its holding on interest to prejudgment interest" and that the Board of Regents "[is] not at all certain as to the correct forum to decide it — the Superior Court or the Commissioner." (Board of Regents Decision II at 3.) *Page 1